UTICA,
October, 1820.

OVERSEERS OF
PITTSTOWN
v.
OVERSEERS OF
PLATTSBURGH.

ROUSE and EDDY, *Overseers of the Poor of* PITTSTOWN, *against* MOORE and HUNTER, *Overseers of the Poor of* PLATTSBURGH.

THIS was an action on the case, to recover compensation for supporting *Elijah Briggs,* a pauper, removed to *Pittstown,* by the overseers of *Plattsburgh,* by virtue of an order, which was, afterwards, quashed at the Court of Sessions of *Clinton* county. The action was for the expenses of supporting the pauper after the order of removal was granted.

This cause came before the Court in *October* term, 1818, on a demurrer to the second plea, on which the Court gave judgment for the plaintiff. (*S. C.* 15 *Johns. Rep.* 436.) Most of the facts in the case appear in the pleadings there stated. The plaintiffs afterwards proceeded to trial on the plea of the general issue, and to have their damages assessed on the issue at law, at the *Rensselaer* circuit, in *July,* 1819, before Mr. Chief Justice *Spencer.*

It was admitted, at the trial, that it appeared by the record of the proceedings of the Court of General Sessions of the Peace of the county of *Clinton,* that on the 8th of *August,* 1815, two justices of the peace, residing in *Plattsburgh,* made an order for the removal of *Elijah Briggs,* the pauper, to *Pittstown,* where he was received on the 26th of *October* following. No appeal was entered until *May,* 1816, when the respondents objected to its being received, as it had not been entered at the Court of Sessions next after the removal; but the Court of Sessions overruled the objection,

*The overseers of the poor, being the public agents and trustees of the towns, in respect to the poor, have, without any express authority from the legislature, a capacity to sue co-extensive with their public trusts and duties. They are corporations sub modo. Where a public office is instituted by the legislature, an implied authority is conferred on the officer to bring all suits, as incident to his office, which the proper and faithful discharge of his official duties requires.*

*Where the order for the removal of a pauper from one town to another, is on appeal to the Court of General Sessions of the Peace, reversed and quashed, the justices of the peace of the town to which the pauper was so improperly removed, may make an order for his removal back to the town from whence he was removed; or if it appears that the pauper has no settlement in that town, they may make a new original order for his removal to the place of his last legal settlement.*

*The overseers of the town to which a pauper is so improperly removed, cannot, after the order is quashed, maintain an action on the case against the overseers of the town from which he was removed, to recover the expenses of his maintenance, he having fallen sick, after his removal; the presumption being, that the order of removal was obtained bona fide: the statute does not make it the duty of the overseers of the poor who cause the pauper to be removed to another town, to take him back at their own charge.*

*Whether, if the pauper so improperly removed, has no legal settlement within this state, such an action can be maintained?*

UTICA,
October, 1820

OVERSEERS OF
PITTSTOWN
v
OVERSEERS OF
PLATTSBURGH.

and proceeded to hear the parties on the appeal. The appellants proved that the pauper was a bastard, born in *Pittstown*, of *S. G.*, whose father resided a few years before in *Hoosick*, and with whom she lived. The Court of Sessions adjudged that the last place of legal settlement of the pauper was in *Hoosick*, and not in *Pittstown*, and therefore the order of removal was ordered to be quashed, and that the respondents pay to the appellants their costs, which were accordingly paid. The defendants, *M.* and *H* were overseers of the poor of *Plattsburgh* at the time the order was quashed, and until the commencement of the present suit, but are not, at present, overseers; and the notice of appeal was served on *Moore* and *Buck*, who were then the overseers in office. It was proved that the plaintiffs were the overseers of the poor of *Pittstown*, when the pauper was removed, and when this action was commenced, and during the intermediate time. The pauper became sick in *July*, 1816, and died at *Pittstown*, on the 19th of *March*, 1819. Before the commencement of this suit, a notice had been served on the overseers of the poor of the town of *Hoosick*, pursuant to the 16th section of the statute, (1 *N. R. L.* 279. *sess.* 36. *ch.* 78.) requiring them to provide relief for the pauper. The plaintiffs proved the sums paid for the board and medical attendance of the pauper, pursuant to the order of the justices for that purpose, he being so sick and diseased as to be unable to be removed. The plaintiffs claimed *interest* on the amount; but the judge ruled that it was not to be allowed. The plaintiffs claimed the expenses down to the time of the pauper's death; but the judge ruled that they were entitled only to the amount expended, to the 6th of *January*, 1817, when the present suit was commenced. The defendants moved for a nonsuit: 1. Because the appeal to the sessions was not entered at the Court next after the order of removal. 2. Because there was a variance between the amount of costs and expenses alleged in the declaration to have been ordered to be paid by the Court of Sessions, and the amount mentioned in the copy of the record produced. 3. Because the record showed that the pauper had a settlement at *Hoosick*. 4. Because the plaintiffs had not proved that the defendants had funds;

nor that they had received any order of a justice to take back the pauper, or that he was sick and unable to be removed. The objections were overruled by the judge, who reserved the points. The defendants proved that the pauper was a bastard, born in *Pittstown*, about thirty-four years ago, of *S. G.* whose father was settled in *Hoosick*, and with whom she resided before and after the child was born.

UTICA,
October, 1820.

OVERSEERS
OF PITTSTOWN
v.
OVERSEERS OF
PLATTSBURGH.

A verdict was taken for the plaintiffs, by consent, for 293 dollars and 54 cents, subject to the opinion of the Court, on a case to be made containing the facts above stated, with liberty to either party to turn the case into a special verdict, or bill of exceptions. It was further agreed, that the defendants, if the Court should decide that they had a right to do so, might, also, move in arrest of judgment, when the case was brought on to be argued.

The case was argued by *L. Mitchell* and *Van Vechten*, for the plaintiffs, and by *Walworth* and *Huntington* for the defendants.

*For the plaintiffs*, it was contended, 1. That the decision of the Court, on the demurrer, (15 *Johns. Rep.* 442.) established the sufficiency of the facts stated in the declaration, and settled many of the points attempted to be raised at the trial. The parties on the record being the same, the defendants are estopped by that decision, from controverting the facts or title established by it. (*Outram* v. *Morewood*, 3 *East*, 346.) It was proved, that the order of removal was quashed. The amount of costs was not set forth in the declaration, *in hæc verba;* the substance, only, therefore, need to be proved, and any slight variation was immaterial. (8 *Johns. Rep.* 455.) The amount of costs awarded, was, indeed, surplusage; and *utile per inutile non vitiatur.* (5 *Johns. Rep.* 89.) The admission by the counsel, of what the record contained, entirely repels the objection. The evidence as to the damage for which the plaintiffs had become *liable*, was proper, and the orders of the justices, as to the medical aid, were sufficient, it being a matter within their discretion. (8 *Johns. Rep.* 323.) The defendants, *M.* and *H.*, were both proved to be overseers when

UTICA,
October, 1820.

OVERSEERS OF
PITTSTOWN
v
OVERSEERS OF
PLATTSBURGH.

the order was quashed, and a certified copy of the order of reversal was served on their counsel. Notice that the pauper was likely to become chargeable to *Pittstown*, was unnecessary, as *Moore* had made complaint of that fact, and must have known it.

Again ; the *appeal* was to the *next* Court of Sessions, within the meaning of the act. The fact, that the legislature had, in *January*, established an extra Court of Sessions for *February*, was unknown to the plaintiffs. Besides, no objection was made, on this ground, at the Sessions, and the proceedings before them must be presumed to be regular, until set aside. (*Str.* 1168. 2 *Burr.* 100. *Doug.* 102. 192. 7 *Term Rep.* 200.) The defendants having, also, appeared at the Sessions, and tried the appeal on its merits, have acquiesced in the regularity of the proceedings.

2. It was not necessary to allege or prove, that the defendants had *funds* in their hands, for the maintenance of the pauper. If another town sends a pauper to the defendants, they, as overseers, are bound to receive him, whether they have funds or not. If, therefore, the pauper had been sent back on an order of the justices of *Pittstown*, the defendants would have been obliged to receive him. So, if another town gives notice to them to provide for a sick pauper, belonging to their town, and who cannot be removed, and they neglect to make the necessary provision, they are liable to have their goods distrained, whether they have funds or not. The policy of the statute, and the pressing wants of the poor and distressed, forbid that the overseers should be allowed such a plea for their neglect of a sacred duty. There is a moral obligation on the overseers of the poor, settled in the town, to provide for their support, without any reference to the question of funds. (2 *East*, 505. 3 *Esp. N. P. Rep.* 91. 3 *Bos. & Pull.* 247. 13 *Johns. Rep.* 382. 15 *Johns. Rep.* 442.) The case of *Bartlett* v. *Crozier*, (17 *Johns. Rep.* 439. in error) does not apply. There was no misfeasance, or omission of duty in that case. It was the case of overseers of highways, who are to lay out the moneys they receive, on repairing the roads, &c.; the statute makes their duty to depend on their having funds, in their hands.

3. It is no answer to say, that the defendants had no or-

der to carry the pauper back to *Hoosick*, the place of his last legal settlement. Two justices might, by an order, have sent him back, for it is merely an execution of the order of Sessions, and until he was sent back, the duty on *Plattsburgh* to support him, continued. (*Const. Poor Laws*, 700. *Houlton* v. *South Beverton. Comberb.* 401. 2 *Salk.* 475. 488.) *Pittstown* could not send him back until he became chargeable; and when he became sick, he could not be removed. This Court, in 15 *Johns. Rep.* 446. say, it may well be doubted whether *Pittstown* could make an original order of removal as to this pauper. Besides, *Plattsburgh* might have got an order to send him back, as well as *Pittstown.* If an injury has arisen from the neglect, it was the fault of the defendants, and they are responsible.

4. There can be no question, that the defen'ants were suable, in their official capacity, as overseers of the poor. The Court, in 15 *Johns. Rep.* 436., had no doubt on this point. They merely declined deciding whether the defendants were liable, in their *private* capacities, for their own official acts, or those of their predecessors in office. The books are full of suits against overseers of the poor in their official capacity. (3 *Went. Plead.* 23. *Sit. Special Assumpsit*, 31. 2 *East*, 505.) The plaintiffs proceed, on the principles of the common law, for a neglect of duty in the overseers of *Plattsburgh*, by which an injury has been produced to *Pittstown.* It is not necessaary to question the succession in office. It is no matter if the defendants are made liable in their individual capacity. If they pay the plaintiffs, it will be so much paid for the town of *Plattsburgh*, and for which they may claim a remuneration from their successors in office. The action cannot be defeated, on this ground, without saying, that the overseers of the poor cannot be sued in any case. If all the requisite grounds for an action exist, it is no objection, that the suit is against overseers. Though not strictly a corporation, having a corporate name and seal; yet, they are *quasi* corporations, having a succession, and a capacity to sue and be sued, as to all matters appertaining to their official duties. (1 *Kyd on Corp.* 19.) They are the representatives of the town as to

UTICA,
October, 1820.

OVERSEE'S OF
PITT-WN

OVERSEERS OF
PLATTSBURGH.

UTICA,
October, 1820.

OVERSEERS OF
PITTSTOWN
v.
OVERSEERS OF
PLATTSBURGH.

every thing concerning the poor; and it is their business to assert, and defend the rights of the town, in regard to the settlement of the poor. It would be nugatory for the statute to confer powers, and impose duties on the overseers of the poor, if there were no means of carrying those powers into execution, or of enforcing the performance of those duties. From necessity, therefore, they must be regarded as corporations, *sub modo ;* otherwise, the salutary provisions of the statute could never be fulfilled.(*a*)   The case of *Crouse* v. *Mabbet,* (11 *Johns. Rep.* 167.) does not apply here.

5. A motion in arrest of judgment, cannot prevail as to any ground which might have been taken advantage of, on the demurrer.   (1 *Str.* 425. 2 *Tidd's Pr.* 825.) The matter of law having been solemnly decided by the Court, they will not permit any one, afterwards, to come, as *amicus curiæ,* to inform them, that the judgment which they gave, on mature deliberation, is wrong.

*For the defendants,* it was argued, 1. That, at common law, there was no obligation on a town to support the poor, nor any remedy to enforce the obligation, if any existed. As between town and town, every obligation is created, and every necessary remedy is provided by statute. Why, then, should the remedy provided by statute be abandoned, and the common law be resorted to, when such an action was never known before ? This is an attempt to support an action on general principles, not on the authority of any adjudged case.   Overseers of the poor are not a corporation; and they can only sue in the particular cases pointed out in the statute which creates their offices.   The injury complained of is not to the plaintiffs, but to the town of *Pittstown.*   If any one has a right of action, it is the town, not the overseers, whose rights and duties are all created by the statute.   In *Crouse* v. *Mabbet & Tripp,* (11 *Johns. Rep.* 167.) the plaintiffs brought an action against *Crouse,* for bringing a pauper into the town of *W.,* without lawful au-

(*a*) Vide *Overseers of Norwich* v. *Overseers of New Berlin, ante;* p. 384.  *H. Bleecker, arguendo.*

UTICA,
October, 1820.

OVERSEERS OF
PITTSTOWN
v.
OVERSEERS OF
PLATTSBURGH.

thority, he having no settlement there. The pauper fell sick, and had been supported by the plaintiffs, as overseers of *W.*, until he died; but the Court held, that the action could not be sustained. In *Rex* v. *Byce*, (1 *Const. Poor Laws*, 324.) an indictment was held to lie against a person who had appealed, for refusing to pay to the overseers the costs; and the reason given is, that there was no remedy provided, nor any direction given, by the statutes, as to the means of enforcing payment.

Parish officers, in *England*, may be a corporation, *sub modo*, as it relates to the ordinary business of the parish. But their office, as *overseers of the poor*, is created by statute, and their duties are all prescribed by the various statutes relative to the poor. As late as 1814, (54 *Geo.* III. ch. 170. sec. 8.) it was found necessary, in *England*, to authorize by statute, the overseers of the poor, and their successors, to prosecute on bonds, &c. given to indemnify the parish against bastards, and to legalize such bonds and securities as had been before taken. The 27th section of our act for the relief and settlement of the poor, (1 *N. R. L.* 289. sess. 36. ch. 78.) which was not contained in the former statute, expressly authorizes suits to be brought by the overseers, for the time being, on notes given for the poor moneys loaned out, on interest, and the power and obligation is continued to their successors. These different provisions by statute, enacted after the poor laws have been in operation two hundred years, afford a strong legislative opinion, that an action of this kind cannot be maintained, without some express provision by statute. There is no moral obligation in favour of the plaintiffs, for the county is made liable to them, by statute, for the expense of supporting sick paupers who are unable to be removed. (1 *N. R. L.* 288.) If the overseers can sue, in their official capacity, then the action survives, in case of the death of the individual, and may be continued by their successors; but express provision is made for this purpose, by the *thirty-first* section of the act. (1 *N. R. L.* 291.)

2. The defendants are not to be made liable, for they did not remove the pauper to *Pittstown*. The order for remo-

UTICA,
October, 1820.

OVERSEERS OF
PITTSTOWN
v.
OVERSEERS OF
PLATTSBURGH.

val was the judicial act of the magistrates, and the actual removal was the individual act of the constable to whom the order was delivered, and over which the defendants had no control. The defendants finding a stranger in the town, make their complaint, as overseers, to the justices, which is all that is required of them by the statute. In *England*, the overseers and parish officers make the removal. (2 *Salk.* 493.) Here it is done by the constable, on the order of two justices. The defendants, after making their complaint to the justices, were passive. They could do nothing more. Their precise duty is pointed out by the statute; and if an overseer is to be made responsible for the acts of justices, on his complaint, no man could be found who would accept the office. Wherever the statutes relative to the poor, have given damages or costs, the town is considered the real party, and is acted upon through their overseers in office at the time. The remedy is by distress, and provision is made to pay them the balance, if any, on going out of office. Now, both these defendants were out of office, at the time of trial, and there is no provision made to reimburse them. Justices of the Peace only, can make orders relative to the poor. In *Rex* v. *Overseers of Chichester*, (1 *Const. Poor Laws*, 403.) an order directing the present overseers to pay to their predecessors, money expended for law charges, was held not to be good. Again; the order of removal made by the justices, was regular and legal; and having been reversed on appeal, it can have no greater effect than a judgment reversed on a writ of error, which does not make persons acting under the original judgment, liable to an action for a tort. If, therefore, the defendants did cause the removal of the pauper to *Pittstown*, it was a judicial act, and they cannot be made liable, unless they acted maliciously, corruptly, or *mala fide*. (2 *Caines' Rep.* 212. 2 *Mass. Rep.* 243, 244. 1 *East*, 555. 563. *Bull. N. P.* 64. 11 *Johns. Rep.* 114.) Nothing of that kind is pretended.

3. No action will lie against the defendants for not removing the pauper back. The defendants had no authority for that purpose. (2 *Const. Poor Laws*. 631 *Clifton* v. *Ramstock.*) If the justices of *Pittstown* could have sent the

pauper back to *Plattsburgh*, then that course ought to have been pursued. If not, they might clearly have removed him to *Hoosick*, where they knew he had a legal settlement. If, as was alleged in the declaration, but which was not proved at the trial, the pauper was too sick to be removed, then the 16th section of the statute provides a sufficient remedy, which should have been pursued. A similar remedy is provided in *England*, in such cases, by what is called the suspension act. (35 *Geo.* III. ch. 101. sec. 2.) There is no statute provision for the expenses of sending the pauper back. Where a constable removes a pauper, under an order of two justices, the counties through which the pauper passes, pay the expense. The town only is authorized to raise money, under our statute, and there is no way provided to compel them to do it. The overseers cannot afford relief, without a justice's order ; and if they do, they lose the amount paid by them.

Again ; there is no evidence that the defendants had any funds which would have enabled them to provide for the pauper. In *England*, the overseers and churchwardens may levy and collect poor rates, without the consent of the parishioners. (*Salk.* 531. 8 *Mod.* 97. *Lord Raym.* 1013.) Though two justices there were to allow the rate, yet it is mere matter of form, and the parish officers may compel them to do it, by *mandamus*. (1 *Str.* 393. 1 *Sid.* 377.)

In *Bartlett* v. *Crozier*, (15 *Johns. Rep.* 254.) *Spencer*, Ch. J. says it would not have been a wilful neglect of duty, nor any neglect at all, if the officer had not the means of repairing the bridge : and *Kent*, Chancellor, in his opinion, in the same case, (17 *Johns. Rep.* 439.) observes, " If the overseer had no money, he was not guilty of a breach of duty, though he did wilfully suffer the bridge to remain out of repair." Under the *English* statutes, overseers have a right to relieve the poor, without an order of the justices, who only make orders to compel the overseers to relieve when they improperly refuse to do so ; and, in such cases, the overseers are summoned to show cause, &c. (43 *Eliz.* ch. 2. 9 *Geo.* I. c. 2. 17 *Geo.* II. c. 38. 36 *Geo.* III. ch. 23.) Our statute gives a remedy by *distress*, on the property of the overseers in office ; and for that they are allowed in their

UTICA,
October, 1820.

OVERSEERS OF
PITTSTOWN
v.
OVERSEERS OF
PLATTSBURGH.

UTICA,
October, 1820.

OVERSEERS OF
PITTSTOWN
v.
OVERSEERS OF
PLATTSBURGH.

accounts. It is singular that no action of this kind has ever been brought in *England*. There the churchwardens are common law officers. The overseers of the poor here are created by statute. In *Bartlett* v. *Crozier*, the Chancellor justly observes : " Where the law renders a public officer liable to special damages, for neglect of duty, the cases are those in which the services of the officer are not gratuitous, or coerced, but voluntary, and attended with compensation ; and where the duty to be performed is entire, absolute, and perfect." In the case of the overseers of the poor, their services are coerced, and they are allowed no compensation ; and their duties are not entire, for they can only act under the order of a justice, who might not authorize the expenditure ; and they are not absolute, for it must depend on the fact of their having funds sufficient to enable them to relieve the pauper ; nor are they perfect, for no authority is given them by law to relieve a pauper so situated.

The only remedy ever attempted to be pursued in *England* against overseers, for refusing to maintain paupers, to levy poor rates, &c. is by indictment. (1 *Str.* 101. *Salk.* 609. 5 *Mod.* 199. *Viner Ab.* tit. *Poor*, 415. 8 *Mod.* 321. 7 *Mod.* 410. 2 *Str.* 1146. 2 *Burrow*, 799. *Sayer*, 163. 1 *Const. Poor Laws*, 324. 338. 443.)

4. The plaintiffs were bound to show that the defendants had notice of the order of reversal, and that the pauper was sick in *Pittstown*, and likely to become chargeable to that town, and also, a request to remove or support him.

The order was reversed the 16th of *May*, and the pauper did not become chargeable to *Pittstown*, until the 30th of *July*. Where the pauper was in the intermediate time does not appear, except from the recital in the order of maintenance of that date, which states that he had come to reside at *Pittstown*, and was taken sick, &c. For aught that appears, he might, at the time of the order of reversal, have been in the adjoining town of *Hoosick*, which was the place of his legal settlement. The declaration states, that the defendants had notice that the pauper remained in *Pittstown*, was sick and chargeable, and that the defendants had been requested to remove or support him. These were all mate-

rial allegations, and ought to have been fully proved, or the plaintiffs should have been nonsuited.

UTICA,
October, 1820.

OVERSEERS OF
PITTSTOWN
v
OVERSEERS OF
PLATTSBURGH.

5. The plaintiffs failed in showing that the pauper had no settlement within this state.   It is now admitted that his legal settlement was in *Hoosick*, and this fact was known to the plaintiffs.   It is contended that the agreement in the declaration is immaterial.   But the Court, in their decision on the demurrer, considered it as material, and it was the principal ground on which the action was held to be sustainable ; for if he had no settlement in the state, the town in which he was taken sick was bound to maintain him. (*Comberb.* 287. 3 *Johns. Rep.* 17. 17 *Johns. Rep.* 41. 1 *N. R. L.* sess. 11. ch. 62. ch. 6. s. 7.)

6. The plaintiffs knew that the pauper's settlement was in *H.* and proceeded against that town on the 16th section of the statute.   They are, therefore, estopped from resorting back to *Plattsburgh.* (*Fort Ann* v. *Kingsbury*, 14 *Johns. Rep.* 367.)   As the plaintiff gave notice agreeable to the 16th section of the act, it is to be presumed that the preliminary steps, which the Court said were requisite under that section, have been taken : and the overseers of *H.* not having appealed, it is conclusive against them.

7. The plaintiffs did not prove that the defendants had been guilty of any offence within the county of *Rensselaer,* and therefore the defendants are entitled to judgment. (1 *N. R. L.* 155.)

[SPENCER, Ch. J. This objection should have been made at the trial.]

The case is made, by consent, subject to all the facts in the case.

The unanswerable objection in this case, is, that the order of removal to *Pittstown*, on appeal, was quashed.   Then, as between the two towns, the pauper's settlement was at *Plattsburgh*, and the justices of *Pittstown* had a right to make an order for his removal back ; (3 *Burns' Just.* 572. 2 *Salk.* 488. 2 *Nolan*, 219. 7 *Mod.* 10. *Burr. Sett. Cases,* 140.) or they might have made a new original order of removal, and sent him to *Hoosick,* his place of legal settlement.

UTICA,
October, 1820.

OVERSEERS OF
PITTSTOWN
v
OVERSEERS OF
PLATTSBURGH.

SPENCER, Ch. J. delivered the opinion of the Court. It has been objected that the plaintiffs, as overseers of the poor of *Pittstown*, have not a capacity to sue for the injury alleged in the declaration. This point was reserved when a question on the pleadings came before the Court, (15 *Johns. Rep.* 436.) in this cause. However correct the principle may be, ordinarily, that the Court will not, upon a motion in arrest of judgment, suffer a point decided on demurrer, to be again agitated, that principle has no application here ; for the demurrer was not to the declaration, but to the second plea. Independently of that, we expressly waived the decision of this question, because, it had not been argued. Under the facts in the case, it is not impeaching our decision on the demurrer, to hear this point argued again, and it would be very unjust not to entertain the question now.

The overseers of the poor are town officers, coeval almost with the settlement of the country. They are the public agents and trustees of the towns, in respect to their poor, and must necessarily, without express authority from the legislature, possess a capacity to sue, commensurate with their public trusts and duties. In *Jackson* v. *Hartwell*, (8 *Johns. Rep.* 424.) we recognized the authority of the *supervisors of a county*, before the act authorizing them to take grants of land for county purposes, to take such grants. They are, *pro tanto*, endued with a corporate capacity. We there said, that there are many instances in the case of collective bodies of men, coming under one general description, endowed with a corporate capacity, in some particulars expressed, but who have, in no other respect, the capacities incident to a corporation. We mentioned the example of a power in churchwardens to take goods, and to bring actions of trespass, and referred to Mr. *Kyd*, for numerous instances of the like kind. In short, there can be no doubt that when a public office is instituted by the legislature, an implied authority is conferred on the officer, to bring all suits, as incident to his office, which the proper and faithful discharge of the duties of his office require. The statute for the relief and settlement of the poor, (1 *N. R. L.* 279.) has given the right to sue in certain cases, in express terms ; but this by

no means proves, that the power would not have existed in-
dependently of the statute.

It now appears, that the pauper had a settlement in this
state, and that it was in *Hoosick ;* and the main question is,
whether the overseers of the poor of *Pittstown* were bound
to make an order removing the pauper to that town. When
the case came before us, on the former occasion, we ex-
pressed an opinion that they were not bound to do so. It
is to be observed, that this was an *obiter dictum·;* for the de-
claration, the sufficiency of which we were considering, con-
tained an express averment that the pauper had no legal
settlement in this state. If that averment had been proved,
and if it had not appeared that the pauper had a legal set-
tlement in the state, I certainly should have considered this
action as sustainable, for the reasons there expressed by the
Court. On a review of the cases, I am of opinion, that it
was competent to *Pittstown* to make an order of removal ;
and that the pauper having a legal settlement in this state,
the defendants, as overseers of the poor of *Plattsburgh*, are
not answerable.

We cannot intend that the order, made at the instance of
the overseers of *Plattsburgh*, was done *mala fide.* This is
never to be presumed, even of individuals ; and the conse-
quences to which they exposed those whom they represent-
ed, as regards the appeal, the expenses of the pauper, and
the costs, all concur in repelling the idea, that their motives
were not *bona fide.* The act, to be sure, turns out to be
unwarranted ; and the town of *Plattsburgh* has paid the le-
gal penalty of that act. Upon the reversal of the order of
removal, it was as though it had never existed. *Pittstown*,
then, as regards any other town, had an original right to
make an order of removal. The pauper having come to
reside in *Pittstown*, no matter how, was likely to become
chargeable ; and then the statute confers the authority on
the overseers to make application to the Justices, who may
thereupon make an order. I still think, that it ought to have
been made the duty of the overseers of the poor of a town
from which a pauper has been removed, on quashing the
order by the Sessions, to take back the pauper, at their own
expense ; and that it is unjust to leave the town, having a

pauper improperly laid at their door, to take measures, at their peril, as regards other towns, to find out his settlement; but this is a *casus omissus* in our statute book. In the case of the inhabitants of *Chalbury* and *Chipping Farrington*, (2 *Salk.* 488.) *Holt*, C. J. was of opinion, that the town appealing from an order of removal, after it was reversed, had a right to send the pauper back to the town from whence he was removed. If so, then *Pittstown* was not without the means of relieving herself from this order of removal. Upon the whole, as it now appears, that the pauper was not settled in *Plattsburgh;* that he had a legal settlement in this state ; that *Pittstown* could either have sent him back to *Plattsburgh,* or made a new original order on the town of *Hoosick,* for his maintenance ; and as the proceedings on the part of *Plattsburgh,* must be regarded as *bona fide,* and the statute does not create or impose upon that town the duty of taking back the pauper, I am of opinion that the defendants must have judgment. This conclusion renders it unnecessary to examine several other points raised in the course of the argument.

Judgment for the defendants.