Murray *v.* Jayne.

———————— •O• ————————

ORANGE SPECIAL TERM, June, 1850. *Brown*, Justice.

## MURRAY *vs.* JAYNE and others.

The defendants were commissioners under an act to raise money to drain the drowned lands in the county of Orange, passed March 6, 1807. The commissioners were authorized to use, occupy and enjoy such lands as were necessary for the purposes of the act, and to acquire such rights of user and occupancy by purchase from the owners, or by an appraisement and payment of the damages in the manner mentioned in the act. For the purpose of providing moneys to

Murray *v*. Jayne.

pay such damages and compensation, and for the draining of the lands, the commissioners were authorized to levy and collect taxes from the lands, and in default of payment, to sell the lands taxed.   By another act of the legislature, passed April 15, 1826, the commissioners were further empowered to open a canal or ditch, and for that purpose to acquire the right to the necessary land, by purchase or appraisement in the manner prescribed in the previous act.   In the year 1829, H. G. W. and G. W., being the owners of a farm at the outlet of the drowned lands, which was occupied and managed exclusively by H. G. W., the commissioners made a parol agreement with the latter, and obtained his license and permission to enter upon such farm and open a canal or ditch through the same, and to use and occupy the necessary lands for that purpose. The damages were not appraised or ascertained, at the time, but it was agreed that the damages should be afterwards ascertained and paid, as provided by law, and that the taxes which the commissioners should thereafter assess upon the farm from time to time before the damages were appraised or ascertained, should be deducted therefrom, and the balance of such damages paid by the commissioners.   The commissioners entered upon the land, and constructed the canal, but omitted to have the damages ascertained and adjusted, although requested to do so.   The title of H. G. W. and G. W. to the farm had been acquired by the plaintiff, by purchase, and with it such rights as the grantors had under the contract with the commissioners.   The defendants, as commissioners, having advertised the farm for sale, and being about to sell the same, or so much thereof as would be sufficient to pay the taxes assessed upon the same, for draining ;

*Held* 1. That the legal import and effect of the agreement made between the owners of the farms and the commissioners was, that the taxes to be assessed upon the farm, for draining, should be deducted from and applied to the payment of the damages ; or, in other words, that the commissioners agreed to collect no taxes, from the farm, until the damages were ascertained, and until the taxes accumulated to an amount larger than such damages.

2. That such agreement having been established, by the verdict of a jury, and the defendants having entered upon the land, in pursuance of the agreement, and occupied the same for more than twenty years, the objection that such agreement was void by the statute of frauds could not prevail, in a court of equity.

3. That the agreement would, had it been under seal, be a covenant running with the land ; and that the agreement being such as a court of equity would enforce, the covenant must, for that purpose and to that extent, be regarded as having passed to the plaintiff, under his deed.

4. That the plaintiff was entitled to an injunction, to restrain the defendants and their successors, from collecting or enforcing the collection of any taxes from the farm in question, until the damages for opening the canal were adjusted, according to the terms of the agreement.

In Equity.   This was a motion for an injunction ; the bill being filed for the specific performance of an agreement.   The facts are stated in the opinion of the court.

*W. F. Sharpe* and *S. J. Wilkin,* for the plaintiff.

*B. F. Dunning,* for the defendants,

BROWN, J. The defendants are commissioners under the act entitled " An act to raise moneys to drain the drowned lands in the county of Orange," passed March 6, 1807. The commissioners under the act are to be elected annually by the proprietors of the lands; and they have power to remove obstructions from the bed of the river Walkill, and to deepen, widen and straighten the same, and certain streams tributary thereto, for the purpose of effectually draining and drying the said drowned lands. They also have a right to use and occupy a sufficient portion of the lands upon the banks of the river as a place of deposit for the materiel taken from the bed of the stream; and they and their successors in office are to use, occupy and enjoy such lands for the purposes aforesaid, and to acquire such rights of user and occupancy, by purchase from the owners or by an appraise- ment and payment of the damages in the manner prescribed in the said act. For the purpose of providing moneys to pay such damages and compensation, and for the prosecution of the work of draining the lands, the commissioners are also authorized to levy and collect taxes from the lands, and in default of pay- ment to sell the lands taxed, and execute conveyances upon such sales to the purchasers thereof. By another act of the legislature, passed April 15, 1826, the commissioners were fur- ther empowered, in prosecuting the work of draining such lands, to open a canal or ditch from some point upon the east side of the river south of Horse Island to another point upon the east side of the mill pond of Gabriel N. Philips, of such depth and size as might be found necessary to lead off the waters of the river in the process of draining the lands: and for that purpose to acquire the right to the necessary land by purchase or ap- praisement, in the manner prescribed in the act of March 6, 1807. Thus it will be seen that these commissioners possess most of the attributes of a body corporate. They are to have perpetual succession, the right to hold and enjoy property, to

Murray v. Jayne.

make and execute contracts, to prosecute and complete a costly and valuable work of improvement, to levy and collect taxes from the lands of the proprietors, and to sell and convey such lands in satisfaction of such taxes; and by necessary implication the right to sue and be sued. They are not created a corporation by express words, nor are they known and recognized in the acts to which they owe their existence, by a given corporate name. But if it were necessary for the purpose of affording the relief claimed in the plaintiff's bill, it would not be difficult to show that they are in fact a body corporate, with the rights, powers and obligations belonging to that class of persons. (13 *Mass. Rep.* 192. 18 *John.* 407. 2 *John. Ch. Rep.* 320. 22 *Wend.* 9. 1 *Cowen,* 260, *note a.* 1 *Bl. Com.* 473.)

In the year 1829 Henry G. Wesner and Gabriel Wesner were the owners in fee of a farm of land at the outlet of the drowned lands, which is described in the plaintiff's bill, and which was then occupied and managed exclusively by Henry G. Wesner, who is since deceased. The commissioners made a parol agreement with H. G. Wesner, and obtained his license and permission to enter upon this farm and open a canal or ditch through the same in the prosecution of their work of draining, pursuant to the first section of the act of the 15th of April, 1826, and to use and occupy the necessary lands for that purpose, and for a place of deposit for the earth and materials taken from the canal. The damages were not appraised or ascertained, but it was agreed at the time the parol license was given, that the damages should be ascertained and paid thereafter as provided by law, and that the taxes which the commissioners should thereafter assess upon the farm of the Messrs. Wesners from time to time before the damages were appraised or ascertained, should be deducted therefrom, and the balance of such damages paid by the commissioners. The fact of the making of this agreement, and the conditions under which the commissioners obtained the right to enter upon and occupy the lands in question, and which is one of the controlling facts of the case, are established by the verdict of the jury who tried the issues. It appears from the pleadings that the commissioners entered,

excavated, and completed the canal, and through it they conducted and still conduct the waters of the river. They are therefore in the actual enjoyment of the lands or of the easement over the lands acquired by this parol agreement. The damages have not been appraised nor paid. The commissioners alone have power to institute the necessary proceedings for that purpose; and although frequently requested to have the damages ascertained and adjusted, they have omitted so to do. The title of Henry G. and Gabriel Wesner has been acquired by the plaintiff, by purchase, since the canal was made; and it is also established by the verdict, as a fact in the case, that such rights as the Messrs. Wesners had under the contract were designed to be passed with the title of the lands to the plaintiff. The pleadings also show that at the time the bill was filed the defendants, then being the commissioners under the acts referred to, had advertised the lands of the plaintiff for sale, and were proceeding to sell the same, or so much thereof as would be sufficient to pay the tax assessed upon the farm, for draining, according to the provisions of the said acts.

All or nearly all the questions in controversy are settled by the pleadings and the verdict of the jury upon issues framed for that purpose; and the court is now to determine whether the present plaintiff is entitled to have the agreement made in 1829, in respect to the damages and the taxes, specifically performed. The question is not now upon the extent of the damages, nor whether they exceed in amount, or fall short, of the taxes; for if the agreement is sufficiently proved and it is such as this court will enforce, then the damages and the taxes must be ascertained and adjusted in the manner prescribed in the agreement. It was said upon the argument that the damages were personal and not real property, and therefore did not pass to the plaintiff by force of the deeds of conveyance. This argument would have had more force if the damages had been ascertained and declared before the execution of the deeds. There would then have been a fixed definite sum due and payable from the commissioners to the owners, which might have been recovered by an action at law. The severance of the damages from the

lands in respect to which they accrued would have been in a measure complete, and they would then have assumed the aspect and the attributes of personal estate. The entry upon the lands, and the opening of the canal, were not tortious acts creating a right of action which died with the person or survived to the representative; but the entry was under an agreement and license to purchase, pay for, and acquire the title at a future period. Until the title was thus acquired there was no such severance of the damages from the lands as converted them into personal estate, and they consequently passed with the deeds as part and parcel of the thing granted. The legal import and effect of the agreement made between Henry G. Wesner on behalf of himself and Gabriel Wesner and the commissioners was this: that the taxes to be assessed upon the farm for draining should be deducted from and applied to the payment of the damages; or, in other words, the commissioners agreed to collect no taxes from the farm of the plaintiff until the damages were ascertained, and until the taxes accumulated to an amount larger than such damages. The agreement to exempt the lands from taxation to the extent of the amount of the damages, would, had the contract been under seal, be a covenant running with the land. (1 *Barn & Cress.* 410. 5 *Barn. & Ald.* 1. 3 *Wilson*, 25.) And if the agreement be such as courts of equity will enforce, for that purpose and to that extent it must be regarded as having passed to the plaintiff under the deed.

The defendants insist that this agreement is within the statute of frauds. That it is designed to convey an interest in lands, but is not in writing, signed by the party assigning or granting, and is therefore void by operation of the 10th section of the old statute of frauds. (1 *R. L. of* 1813, *p.* 78.) The objection, however well taken to the validity of the contract at law, can not prevail in a court of equity, under the proof in this case. Here the particular agreement set up in the bill has been established by the verdict of the jury. The entry upon the lands, and the occupation thereof for more than twenty years, was in accordance with and in part performance of the agreement. All the requisites demanded by courts of equity as the

grounds of their interference to enforce parol agreements of this kind are fully made out. After having had the enjoyment of the property for so great a length of time, under the contract, the defendants can not evade the force of their own obligations and shelter themselves behind the statute of frauds. "The distinct grounds upon which courts of equity interfere in cases of this sort are, that otherwise one party would be enabled to commit a fraud upon another. And where one party has executed his part of the agreement, in the confidence that the other party would do the same, it is obvious that if the latter should refuse, it would be a fraud upon the former to suffer this refusal to work to his prejudice." (2 *Story's Eq. Juris.* §§ 759, 761. 1 *John. Ch. Rep.* 131. 3 *Barb. Ch. Rep.* 407.)

The plaintiff is entitled to an injunction to restrain the defendants and their successors from collecting or enforcing the collection of any rents from the farm of the plaintiff mentioned in the bill, until the damages for opening the canal are appraised and adjusted according to the terms of the agreement. And he is also entitled to a decree to recover his costs, to be taxed, out of any money in the hands of the defendants or their successors in office, belonging to the commissioners, under the aforesaid acts. And if the costs can not be obtained from that source, then they are to be paid by the defendants, out of their own property.

---

. SAME TERM. *Before the same Justices.*