IN THE MATTER OF THE APPLICATION OF THE ROME, WATERTOWN AND OGDENSBURGH RAILROAD COMPANY, APPELLANT, *v.* THE ONTARIO SOUTHERN RAILROAD COMPANY AND OTHERS, RESPONDENT.

*Right of one company to cross the tracks of another — when an agreement as to, binds the successors of the respective companies.*

In 1872 two railroad companies, A. and B., by their respective presidents, entered into an agreement by which A. granted to B., and its successors, the right to intersect and cross the tracks of A., upon complying with certain conditions, and upon payment of $800 a year on account of the expense of keeping a flagman at such crossing, B. agreeing to comply with such contract on its part. Subsequently each company's road was sold under the foreclosure of mortgages prior in date to said agreement, neither company, however, was made a party to the action for the foreclosure of the mortgage on the other company's road. The

company organized by the purchasers of company B.'s road subsequently consolidated with the appellant under chapter 917 of 1869. The title to company A.'s road passed to the respondent. The agreement was carried into effect, and complied with after the foreclosure of both mortgages by the parties acquiring title to the respective roads.

These proceedings were instituted by the appellant, under chapter 140 of 1850, to acquire a right to cross the track of the respondent at the points provided for by the agreement. *Held,* that the agreement made by the original companies was valid and enforceable in equity; that it was binding upon the parties to this action as the successors of the said companies, and that the application was, therefore, properly denied.

APPEAL from an order of the Monroe Special Term dismissing the petition of the appellants to acquire title to a crossing on the line of the respondent's railroad at Wallington, Wayne county, pursuant to the provisions of chapter 140 of the Laws of 1850.

The respondents set up, as a bar to the proceeding, an agreement in writing made on the 1st November, 1872, between the Sodus Point and Southern Railroad Company, and the Lake Ontario Shore Railroad Company, by their respective presidents, respecting the crossing referred to. By the agreement the first named company granted to the company last named, and its successors, the privilege of crossing its track, the track of the first named company at Wallington, at grade, upon certain conditions therein expressed, and the company last named agreed among other things to pay to the first named company, on account of the expense of a flagman at said crossing, to be provided by the first named company, $800 a year, in half-yearly payments, and to construct a building for a flagman to live in, and a suitable signal-pole, with its necessary fixtures, at said crossing.

The Special Term referred the matter to a referee to take proofs, and by his report it appeared : That prior to the making of the agreement in question, the Sodus Point and Southern Railroad Company executed a mortgage of their road and its appurtenances acquired, or to be acquired, which mortgage was foreclosed subsequently to the making of said agreement, and the title to the mortgaged property passed to the respondent November 30, 1875. The Lake Ontario Shore Railroad Company also, prior to making said agreement, mortgaged their road and its appurtenances. The mortgage was foreclosed after said agreement was made, and the

title to the property covered thereby became vested in another corporation, entitled "The Lake Ontario Railroad Company," which latter company afterwards was consolidated, pursuant to the statute, chapter 917 of the Laws of 1869, with the Rome, Watertown and Ogdensburgh Railroad Company, under the name of the latter company. The company formed by such consolidation is the petitioner and appellant herein.

Immediately after the making of said agreement the Lake Shore Company, by virtue of the privilege thereby granted, constructed a crossing at the point specified in the agreement, which has ever since been used by said company and its successors, and the sum of $800 yearly was paid by the company using the same down to the time of the consolidation. Since the consolidation the petitioner has paid $200 on account of the use of the crossing and the expense of a flagman, but with the express declaration that it did not thereby recognize said agreement, and with the mutual understanding that neither party were to be prejudiced in respect to such agreement by the payment or receipt of the money.

The referee decided that the agreement binds the successors of the contracting parties, and is a bar to the proceeding. His report was confirmed at Special Term.

*C. T. Richardson*, for the appellant. The contract, as between the parties to it, was not a lease ; if a lease, it is in perpetuity and a freehold estate. Bouvier Law Dic., tit. Freehold, and is void, not being under seal. (3 R. S. [6th Banks ed.], 141, § 6; 2 id., 119, § 158.) The stipulations on the part of the Lake Ontario Shore Railroad Company were "to pay on account of the expenses of a flagman," "and to construct a house suitable for a flagman's residence," neither of which would be covenants running with the land or which would bind assignees. (*Cole v. Hughes*, 54 N. Y., 447; *Harsha* v. *Reed*, 45 id., 415; *Wheelock* v. *Thayer*, 16 Pick., 68; 3 T. R., 402, 1 H. Blackstone; *Coffin* v. *Talman*, 8 N. Y., 465; *Armstrong* v. *Wheeler*, 8 Cow., 98; *Thompson* v. *Rose*, id., 266; *Newman* v. *Wells*, 17 Wend., 136, 147–148; Bouvier s Law Dic., title Covenant, and cases there cited.) An assignee of a vendee cannot be compelled to pay the money due on contract, or to perform the contract. (*Champion* v. *Brown*, 6

J. C. R., 398; *Adams* v. *Mollheiser*, 40 Barb., 225; *Mills* v. *Watson*, 1 Sweeney, 374.)

*J. E. Briggs*, for the respondent.   By operation of the agreement under the statutes (2 R. S. [Bank's ed.], 1553, §§ 39, 110, 111 121–132), the same became and was a complete franchise to each corporation, inseperably connected with each railroad property and road, and similar to a covenant running with the land, and in fact and in law was such.   (1 Washburn on Real Property [4th ed.], 495 [Marg. p. 327], *et seq.;* 2 id., 16, 17 [Marg. p. 452], *et seq.;* id., 390–1–1 [82], *et seq.;* 2 R. S. [B's 6th ed.], 1128, §§ 20, 21; 1 Smith's Leading Cases, 141–147.) In one of the above cases the word " assigns " was wanting, but " acceptance of possession " alone was held sufficient to bind him. The covenant to pay rent or " dues " of itself raises the liability of petitioner or its assigns to pay to the other company.   (1 W. on R. P. and statutes above cited; *Astor* v. *Turner*, 11 Paige, 336; *Chasm* v. *Carley*, 5 Sandf., 547; *Thursby* v. *Plant*, 1 Saund., 240; *Petton* v. *Deshon*, 1 Gray, 325; 1 W. on R. P., 497, and cases there cited; id., 501, par. 11, and cases there cited; also section V, commencing on page 507.)   The covenants of the lease or agreement are a part of the estate and franchise of each party ; at all events of the franchise.   (2 W. on R. P., 286–287, and cases cited ; also, *Hooper* v. *Clark*, L. R. 22, B. 200.)   The agreement gives to petitioner's grantor and its successors a right to cross at grade under the protection of a flag or signal at Wallington, at a stipulated price, to be paid for the daily and hourly recurring responsibility, danger and expense to respondent, the conveyances of both railroads to the present owners carry with them to each the burdens and to each the benefits, and each present party is bound by the covenants and conditions of the agreement.   (2 W. R. P., 303–304; *Kent* v. *Waite*, 10 Pick., 138; 2 Rolle's Abr., 60 Pl. 1; *Underwood* v. *Carney*, 1 Cush., 285; *Webster* v. *Stevens*, 5 Duer, 553.)

SMITH, J.:

Each of the corporations, parties to the agreement of November, 1872, was organized under the general railroad act of 1850.

That act gives power to every corporation formed under it to cross with its track any other railroad before constructed at any point on its route, and provision is made for ascertaining and determining the amount of compensation to be made therefor, in case the two corporations cannot agree in respect to it. (Laws 1850, chap. 140, § 28, sub. 6.) That in every such case the two corporations have power to make an agreement respecting the amount of compensation, is clearly to be implied from the provision referred to. No question was made on the argument, as to the power of the president of each corporation to bind his corporation by the agreement in question.

We may assume, therefore, that the agreement was not *ultra vires.* It secured to the Lake Shore Company a perfect right to cross the track of the Sodus Point Company, and its provisions were such that the former company was enabled to enjoy the right in perpetuity, by performing its part of the agreement. Even in case of the default of the Lake Shore Company the agreement would not have been terminated, unless the other party had chosen to consider it forfeited. (*Folts* v. *Huntley*, 7 Wend., 210.) If, therefore, the Lake Shore Company had instituted a proceeding, under the statute, against the Sodus Point Company, after the making of the agreement and while the two companies owned and operated their respective roads, it can hardly be doubted but that the agreement, and the acts of the parties under it, would have been a bar to the proceeding. Not only would the petitioning corporation have been in the enjoyment of all which it could acquire by the proceeding, but the essential jurisdictional fact of inability to agree would have been lacking.

The important question, therefore, is whether the corporations now litigating, having acquired respectively the roads of the Lake Shore and Sodus Point Companies, are bound by the agreement. Had the agreement been under seal it would have been a grant of an easement, liable to be defeated by the default of the grantee to perform the covenants on its part; and in such case the semi-annual payment reserved would have been rent (*Van Rensselaer* v. *Ball*, 19 N. Y., 100), the right to recover which would have passed to the grantee of the servient estate. (1 R. S., 747, 748, §§ 23, 24, 25; *Van Rensselaer* v. *Ball, supra.*) So, too, the burden

or obligation to pay rent, as well as the benefit, would have run with the easement, both being so inseparably connected as that each would have been necessary to the existence of the other. (1 Smith's Lead. Cases [5th Am. ed.], 143, and cases there cited.) The same would have been true of the covenant on the part of the grantor to furnish a flagman at the crossing, and of the covenants on the part of the grantee to build a house at the crossing for the flagman to live in, and a signal pole to be used by him in signalling trains approaching the crossing, each of which conditions directly touched and affected the thing granted. (*Norman* v. *Wells*, 17 Wend., 136.) This is upon the assumption that covenants will run with inheritances incorporeal — a position which, although it has been controverted (*Wheelock* v. *Thayer*, 16 Pick., 69), seems to be supported by authority. (*Bally* v. *Wells*, 3 Wilson, 26; 1 Smith's Lead. Cases, 161, and cases cited.)

Although the agreement, not being under seal, is not at law a technical grant; yet it vested in the Lake Shore Company substantial legal and equitable rights and interests, appertaining to their road and essential to its use. It gave them the legal right to enter upon the road of the Sodus Point Company, and there construct, maintain and use a crossing so long as it performed its share of the agreement, and that right it availed itself of and fully enjoyed, under the agreement, so long as it continued to own and operate its road. The agreement is one which a court of equity would have enforced, if performance had been withheld; and in equity part performance would supply the want of the corporate seal of the contracting parties. (Fry on Spec. Prop., 255.) The agreement being such as a court of equity would enforce, the rights of each party for that purpose, and to that extent, were capable of being transferred (*Murray* v. *Jayne*, 8 Barb., 612, 617), and would have passed, under a deed of the road of such party, as appurtenant to the road. (Id.)

The appellant claims title to the road which belonged to the Lake Ontario Shore Railroad Company, under a mortgage executed by the latter company, which described the property and rights thereby mortgaged and conveyed, in language sufficiently broad and comprehensive to include the rights and interests which the mortgagor acquired under the agreement in

question, although executed subsequently to the mortgage. It expressly conveyed " the railroad constructed and to be constructed   *   *   *   and the rights, privileges and franchises now owned by the said company, or which shall hereafter be owned by it, forming a part or appertaining to, or necessary or convenient to or about " said railroad   By the foreclosure and sale the property, rights, privileges and franchises covered by the mortgage passed to the purchasers and to the corporation formed by them and their associates, under the name of the " Lake Ontario Railroad Company." (Laws 1854, ch. 282, § 1; Laws 1857, ch. 444, § 1.)   That company used the right of crossing and paid at the stipulated rate for the same, pursuant to the agreement, until it was consolidated with the Rome, Watertown and Ogdensburg company.   The consolidation was effected under chapter 917 of the Laws of 1869.   The fourth section of that act provides that upon the consummation of the act of consolidation of two or more corporations under said act, " all and singular the rights, privileges, exemptions and franchises of each of said corporations parties to the same, and all the property, real, personal and mixed   *   *   *   shall be taken and deemed to be transferred to and vested in such new corporation, without further act or deed ; and all claims, demands, property, rights of way, and every other interest, shall be as effectually the property of the new corporation as they were of the former corporations," etc.   By the fifth section it is declared that " the rights of all creditors of, and all liens upon, the property of either of said corporations, parties to said agreement and act shall be preserved unimpaired, and the respective corporations shall be deemed to continue in existence to preserve the same, and all debts and liabilities incurred by either of said corporations, except mortgages, shall thenceforth attach to such new corporation, and be enforced against it and its property to the same extent as if said debts or liabilities had been incurred or contracted by it."   The mortgage executed by the Sodus Point and Southern Railroad Company also conveyed its railroad and all things pertaining to it ' acquired or to be acquired ' and they became vested in the Ontario Southern Railroad Company.   That company acquired title on November 30, 1875, and its right to receive the payments provided for by the agree-

452 R., W. AND O. R. R. CO. v. O. S. R. R. CO.

FOURTH DEPARTMENT, JANUARY TERM, 1879.

ment in question was recognized by the Lake Ontario Railroad Company, the latter company having made the payment which fell due on December 1, 1875. By that act, the latter company recognized its liability to the same extent as if it had been a party to the agreement. The statute subjected the consolidated company to the liabilities of the Lake Ontario Company in respect to the agreement and the rights enjoyed under it, to the same extent as if such liabilities had been contracted by it. Its position was very different from that of an assignee of a vendee of land, to which it is likened by the appellant's counsel. We think that by the operation of the several statutes to which we have referred, the appellant is bound by the agreement, so long as it enjoys the right created by it, and that it may enforce the agreement in equity, against the respondent, in case of its refusal to perform.

The case is not affected by the circumstance that the road of each company was under mortgage before the agreement was made, and that the mortgages have been foreclosed. Neither the Sodus Point Company nor its successor was made a party to the foreclosure of the mortgage executed by the Lake Ontario Shore Railroad Company, nor was the latter company, or either of its successors made a party to the foreclosure of the mortgage given by the Sodus Point Company. As to the parties to this proceeding, the mortgage lien upon their respective rights and interests under the agreement are unforeclosed, and the mere existence of the lien does not affect the present question.

The order should be affirmed, with costs.

MULLIN, P. J., and TALCOTT, J., concurred.

Order of Special Term affirmed, with ten dollars costs and disbursements.