MICHAEL RYAN and THOMAS NEVINS, Appellants, *v.* JOHN L. Dox, Respondent.

A fraudulent use of the statutes for the prevention of frauds, &c., will not be permitted; and a court of equity will interfere against a party intending to make such statute an instrument of fraud.

Where a purchaser under a foreclosure sale undertakes to purchase for the benefit of the mortgagor, and thus acquires the title at a price greatly below its value, he will be deemed the trustee of the party for whom he has undertaken the purchase, and, on tender to him of the purchase-money and interest, he will be compelled to convey the property to the party equitably entitled.

It is no objection that the agreement, by which he undertook to purchase for the benefit of the owner of the equity of redemption, was not in writing. The law makes him a *trustee ex maleficio.*

*Henry R. Selden,* for the appellants.

*Alexander S. Johnson,* for the respondent.

DAVIES, Ch. J. This action was tried by a referee, who held, as matter of law, that, unless the agreement set out in the complaint in relation to the purchase by the defendant at the master's sale of the premises in question, or some note or memorandum thereof, expressing the consideration, be in writing, the same was void, and created no interest in the plaintiffs in said premises, and could not be enforced against said defendant, in law or equity. And he further reported, as matter of fact, that no proof was made or offered on said trial, by or in behalf of the plaintiff, of any such agreement in writing, or of any note or memorandum in writing of such an agreement, or of any deed, conveyance or instrument in writing subscribed by the defendant or his lawful agent, creating or declaring any trust or interest in said premises in favor of said plaintiffs, and that no proof was made or testimony or evidence offered, on the part of the defendant. The judgment entered for the defendant upon the report of the referee, was affirmed at the General Term, and the plaintiffs now appeal to this court.

We are at liberty to assume, from this finding, that the agreement set out in the complaint was proven on the trial before

the referee. To ascertain what that agreement was, we must have reference to the complaint and the offer made by the plaintiffs on the trial. The plaintiffs averred in the complaint that the plaintiff Michael Ryan, being seized of certain lands in the town of Seneca, made and executed a mortgage thereon, in the year 1839, to secure the sum of $800, part of the purchase-money thereof, and that, in the month of October, 1841, said plaintiff Ryan conveyed to the said Nevins, the other plaintiff, an equal undivided half of the said premises; that plaintiffs being unable to pay the installments on said mortgage as they became due, the said mortgage was foreclosed, and said plaintiffs procured of one Lewis the sum of $300, which was paid on account of said judgment of foreclosure, and a portion thereof, to the extent of $300, was assigned to said Lewis as his security for such advance; that said Lewis, becoming importunate for his money, and the plaintiffs being unable to raise the same for him, Lewis proceeded to advertise said premises for sale on the 12th day of October, 1843, for the purpose of raising said sum of about three hundred dollars, while said premises were worth the sum of four thousand dollars. The complaint further averred, that while said premises were thus advertised for sale, and before the day of sale had arrived, the plaintiffs, being men of limited means, and unable to raise the money which would be needed to stop the said sale, and to pay up the amount due on the said decree for the debt and the costs which had accrued, applied to the defendant Dox, reported to be a man of ready money, and who had always professed to be interested in their behalf, and asked him to assist them, and aid them to raise the money to pay the amount due on said decree and save the said premises from being sold away from them, and from being sacrificed for the small amount, compared with their value, which was claimed upon said decree. That said Dox did then profess and declare a willingness to help said plaintiffs for such purpose, and did then and there agree with the said plaintiffs that, on the day of said sale, he, the said Dox, would attend the same and bid off and purchase the said premises at such sale, upon the express

agreement and understanding, between the plaintiffs and said Dox, that such bidding and purchase, if made by the said Dox, should be for the benefit and advantage of these plaintiffs, and the plaintiffs upon such agreement and understanding agreed that they would not find any other one to go their friend at the said sale, and to bid in and purchase the said premises for them; and that it was expressly understood and agreed between the plaintiffs and said Dox, that if he became the purchaser of said premises at said sale he should take the deed of the same from the said master in his own name, but only by way of and as security to himself for what money he should have to advance and pay on such purchase, and with the agreement, promise and undertaking between said Dox and these plaintiffs, that whenever these plaintiffs should repay him the amount which he should pay to procure and effect such purchase and to get the deed therefor, with the interest thereon, and a reasonable compensation for his services therein, he, the said Dox, should convey the said premises to these plaintiffs and again vest the title thereto in them, and should in the meantime hold the said premises in his own name as security only for the said moneys, and always subject to the above agreement and defeasance. That in pursuance of said agreement, said Dox attended said sale, and bid off the same for the sum of $100, he being the only bidder at said sale, and the same was struck off to him and he received the deed therefor. That at said sale it was talked about and understood by those present thereat, that said Dox was bidding for the benefit of these plaintiffs, and that said premises were struck off to him only as security to him for the repayment to him by these plaintiffs of the moneys he should advance and pay for the same and interest thereon, and his reasonable charges for his attention thereto. And the plaintiffs averred that such was the fact, and that in truth said Dox did bid off and purchase the said premises for these plaintiffs, and to save the same for them, and took the deed in his own name, only as such security as aforesaid, and that in consequence of such understanding other persons abstained from bidding on said premises, and the same was

struck off to said Dox without any opposing bid, although the plaintiffs aver that the same were then worth four thousand dollars and upwards. And the plaintiffs also averred that if they had not relied upon said agreement, promise and undertaking of said Dox, they would not have allowed the said premises to have been struck off for the said sum of $100, but could have found other persons to have purchased the said premises, and saved the same from sacrifice, but that as said agreement was made more than a month before said sale, these plaintiffs relied upon it and made no other effort to procure the money, or the assistance of friends to save and buy said premises.

That at the time of said sale these plaintiffs were in the possession of said premises, and continued in possession thereof and made payments on account of the incumbrances thereon until some time in the year 1849, with the knowledge, privity and consent of said Dox. And that during all that time said Dox never exercised any acts of ownership over said premises, or interfered with the ownership, use, occupation or possession thereof by the plaintiffs, and that during all that time the assessments and taxes thereon were paid by the plaintiffs, with the knowledge, privity and assent of said Dox. That in the year 1849, the said plaintiffs were induced by said Dox to surrender the possession of said premises to him, and in the year 1851 he refused to come to a settlement with the plaintiffs, and denied that he held the said premises for their benefit, or that they had any interest therein. The referee excluded said evidence, and decided that he would not receive any parol evidence to establish, or tending to establish, the said agreement, and that upon the case made by the pleadings, assuming there was no agreement in writing as stated in the answer, there can be no recovery by the plaintiffs. To this decision and ruling, the plaintiffs' counsel duly excepted.

This exception presents the main question for consideration and decision upon this appeal, and the referee in his report states the ground or reason of his decision to be that unless the agreement mentioned, or some note or memorandum

thereof, expressing the consideration, be in writing, the same was void, and could not be enforced against the defendant. If the referee was right in this conclusion, then the plaintiffs were properly nonsuited, and the judgment for the defendant should be affirmed. If in error, then it follows that there must be a reversal and a new trial. The Revised Statutes declare that no estate or interest in lands, nor any trust or power over or concerning lands, or in any manner relating thereto, shall be created, granted or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting or declaring the same. (1 R. S., 134, § 6.) It is manifest that the referee had this provision before him, and that his decision was based upon the assumption of its applicability to the case in hand. In arriving at this conclusion, he entirely ignored all consideration of fraud, or of part performance, as elements of the transaction. Section 10 of the same title declares that "nothing in this title contained shall be construed to abridge the powers of a court of equity to compel the specific performance of agreements in cases of part performance of such agreements." (1 R. S., 135, § 10.) It is well settled that courts of equity will enforce a specific performance of a contract within the statute when the parol agreement has been partly carried into execution. (2 Story Eq., § 759.) And the distinct ground upon which courts of equity interfere in cases of this sort is, that otherwise one party would be enabled to practice a fraud upon the other, and it could never be the intention of the statute to enable any party to commit such a fraud with impunity. Indeed, fraud in all cases constitutes an answer to the most solemn acts and conveyances, and the objects of the statute are promoted, instead of being obstructed, by such a jurisdiction for discovery and relief. And when one party has executed his part of the agreement in the confidence that the other party would do the same, it is obvious that if the latter should refuse, it would be a fraud upon the former to suffer his refusal to work to his prejudice.

In Fonblanque's Equity, it is said "if the contract be carried into execution by one of the parties, as by delivering

possession, and such execution be accepted by the other, he that accepts it must perform his part; for when there is a performance, the evidence of the bargain does not lie merely upon the words but the facts performed, and it is unconscionable that the party that received the advantage should be admitted to say that such contract was never made." (Fonbl., B. 1, ch. 338, p. 181.) And the universal rule is correctly enunciated by Brown on Frauds, when he says: "The correct view appears to be that equity will at all times lend its aid to defeat a fraud, notwithstanding the statute of frauds." (Brown on Stat. of Frauds, § 438.) In the present case, we are to assume that the agreement was made as set out in the complaint, and performed on the part of the plaintiffs as therein stated. We then have a distinct and unequivocal agreement established, and performance by one party of all that was to be done in pursuance of it on his part. We find the other party, by reason of the acts and omissions of this party, obtaining the possession and title to a large amount of real estate for a trifling sum compared to its actual value, and refusing to fulfill the agreement on his part. He interposes the statute of frauds as a shield, thus using a statute designed to prevent frauds, an instrument whereby one can be perpetrated with impunity. This a court of equity cannot tolerate. *Wetmore* v. *White* (2 Caines Cas. in Error, 87), was an action brought in chancery to compel the specific performance of a contract by parol relating to lands. The chancellor dismissed the bill, but the Court of Errors unanimously reversed his decree. Thompson, J., in delivering the opinion of the court, says: "The appellant's claim resting altogether upon parol contract, it becomes necessary to examine whether any obstacle to relief is interposed by the statute for the prevention of fraud. I think there is not. It is an established rule in equity that a parol agreement, in part performed, is not within the provisions of the statute. (Citing 1 Fonbl., 182, and cases there noted.) To allow a statute, having for its object the prevention of frauds, to be interposed in bar of the performance of a parol agreement, in part performed, would evidently encourage the mischief the legislature

intended to prevent. * * Possession delivered in pursuance of an agreement is such a degree of performance as to take a contract out of the statute." The same doctrine was reaffirmed in *Parkhurst* v. *Van Cortland* (14 Johns., 15, 35, 36). In *Lowry* v. *Zero* (3 Barb. Ch., 407, 413), the chancellor said the principle upon which courts of equity hold that a part performance of a parol agreement is sufficient to take a case out of the statute of frauds is, that a party who has permitted another to perform acts on the faith of an agreement shall not be allowed to insist that the agreement is invalid, because it was not in writing, and that he is entitled to treat those acts as if the agreement, in compliance with which they were performed, had not been made. In other words, upon the ground of fraud in refusing to execute the parol agreement after a part performance thereof by the other party, and when he cannot be placed in the same situation that he was before such part performance by him." (See also *Phillips* v. *Thompson*, 1 Johns. Ch., 131; *Murray* v. *Jayne*, 8 Barb., 612.)

In *Hodges* v. *Tennessee Marine and Fire Ins. Co.* (8 N. Y., 416), this court held that in equity parol evidence was admissible to show that a deed absolute on its face was in fact a mortgage, and so intended by the parties thereto. And in *Despond* v. *Walbridge* (15 N. Y., 374), this court also held that an assignment of a lease, absolute on its face, was in fact made for the purpose of securing a debt, and that such debt had been fully paid; and that under the Code of Procedure parol evidence is admissible to show that such assignment, though absolute in its terms, was intended as a mortgage.

The case of *Brown* v. *Lynch* (1 Paige, 147), is so like to that now under consideration that it may be profitable to refer to it at length. A mortgage upon a farm was foreclosed in chancery and advertised for sale by a master. Before the sale, Brown, the defendant, made an arrangement with the plaintiffs, the Lynches, whereby he agreed to purchase the farm in for their benefit, for which he was to receive a stipulated compensation. The mortgagee, in order to favor

TIFFANY—VOL. VII.          40

the Lynches, agreed with Brown that he might bid off the property for about half the amount of the mortgage. Brown, at the sale, prevented others bidding by representing that he intended to buy for the Lynches, and he purchased the farm at the master's sale for $1,500, about $1,000 below its value. Afterwards Brown refused to convey the farm to the Lynches, or to account to them for the value, although they tendered to him the amount of his bid, with interest, and the sum agreed for his services. And it was held by the Court of Chancery that Brown was a trustee for the Lynches, and had no other interest in the farm than that of mortgagee to secure the repayment of the purchase-money, and of the payment of the sum agreed to be allowed him for his services. And that the Court of Chancery would relieve against a fraud by converting the person guilty of it into a trustee for those who have been injured thereby. EMOTT, Vice-Chancellor, decreed for the plaintiffs, holding the defendant had committed a fraud upon the plaintiffs by agreeing to purchase for their benefit; when, in truth, he meant to purchase for himself, and that he had committed a fraud upon the plaintiffs, by his acts and representations, in preventing bidding at the sale. And he proceeds to show, by the citation of numerous authorities, that a court of equity can provide adequate relief by declaring the purchaser a trustee for the person defrauded. And he quotes with approbation the remarks of Lord ELDON, in *Mertall v. Gillespie* (11 Ves., 626), where he says:

" Upon the statute of frauds, though declaring that interest shall not be barred except by writing, cases in this court are perfectly familiar, deciding that a fraudulent use shall not be made of that statute; when this court has interfered against a party meaning to make it an instrument of fraud, and said he should not take advantage of his own fraud, even though the statute has declared that, in case these circumstances do not exist, the instrument shall be absolutely void."
The chancellor affirmed the decree, and observed, that the Lynches had an interest in the premises which they had a right to protect and preserve, and it would have been a gross

fraud for any one to hold out to them, under such circumstances, that he was bidding off the property for their benefit, when he, in fact, intended to appropriate it to his own use. If the appellant did in fact bid it off for them, under the agreement, he held it in trust for them, and had no other interest in it than that of a mortgagee, to secure the repayment of the purchase-money and the $60 agreed to be paid him for his trouble. But if he had no such intention, and did not, in fact, bid off the property in trust for them, he was guilty of a fraud, which the court will relieve against. The cases referred to by the circuit judge (vice-chancellor), fully establish the principle that this court has power to relieve against such fraud, and the means to be employed is to convert the person who has gained an advantage by means of his fraudulent act, into a trustee for those who have been injured thereby." This case was cited with approbation in *Anderson* v. *Lemore* (8 N. Y., 239), and the principle of it adopted by this court in that case.

Its principle was also adopted and approved of in *Sandford* v. *Morris*, decided at Special Term of Supreme Court in May, 1859, and affirmed at General Term in the first district in June 1861. In that case, certain premises were owned by the plaintiff's husband, and he made an assignment thereof, and his assignees advertised the same for sale. The plaintiff was anxious to purchase them in at the sale, and made an arrangement with the defendant Morris by which he agreed to attend the sale and bid them off in his name for the plaintiff, and on payment of the sum bid convey the same to the plaintiff. In consequence of this arrangement, the plaintiff refrained from bidding at the sale, and the premises were struck off to the defendant for the sum of $20, subject to the prior incumbrances. The defendant subsequently sold the premises so purchased for the sum of $2,000, of which the plaintiff had received one-half, and the action was brought to recover the residue. It was held that the plaintiff was entitled to recover, and that the defense of the statute of frauds, interposed by the defendant, was no bar to the relief sought by the plaintiff; that

the agreement was established beyond controversy, and the defendant was bound as well by sound morals as established principles of law to the performance of it. On the hearing of that case, the opinion of Mr. Justice EMOTT, in the case of *Bergen* v. *Nelson* (not reported), was read, distinctly affirming the doctrine of *Brown* v. *Lynch* (*supra*). The case of *Osborn* v. *Mason*, before the vice-chancellor of the first circuit (not reported), also affirming the doctrine of that case, was also cited.

Mason, in that case, agreed with Osborn to attend a sale of certain premises, Osborn being either owner or a subsequent incumbrancer, Mason also having a claim upon the premises as an incumbrancer. Mason agreed to bid in the premises at the sale, and then to let Osborn have them for the amount at which they stood him in, including his own incumbrance. Mason bid off the premises and then refused to fulfill his agreement, which was by parol. The vice-chancellor held that the statute of frauds was no bar to the suit for a specific performance of the agreement which was decreed, and on appeal to the chancellor the same was affirmed.

*Voorhies* v. *St. John*, was argued and decided in this court in December, 1863. It was an action brought to recover moneys received by the defendant on a sale of a house and lot in the city of New York, and a leasehold estate in two buildings on other lots therein, and for an account of the rents and profits received therefrom. The property had formerly belonged to the husband of the plaintiff, and consisted of three parcels, and upon a sale thereof by his assignees, the plaintiff requested two of her friends to attend the sale and bid off two of said parcels for her benefit. They subsequently, at her request, transferred their bids to the defendant, St. John, and he took the conveyance therefor to himself, and paid the assignee for the same, declaring, at the time, that the plaintiff wished him to buy that property for her. At the sale of the other parcel, St. John attended the assignee's sale and bid off the same himself, and the assignments of the two bids and the titles to all the three pieces of property made out to him together in his own name. All

these acts were done by St. John for Mrs. Voorhies, at her request and for her benefit. The referee reported in favor of the plaintiff, and the judgment thereon was affirmed at the General Term of the first district, on the authority of *Sanford* v. *Norris* (*supra*). On appeal to this court, that judgment was affirmed in December, 1863, and distinctly on the ground that the statute of frauds was no bar to the performance of the agreement. We must hold this case as decisive of that now under consideration. The same doctrine has frequently been affirmed in other cases.

. In *Cox* v. *Cox* (5 Rich. S. C. Eq., 365), the owner of land, in danger of being summarily dispossessed by a sheriff's sale, agreed with his brother, the defendant, that the latter should bid off the land and pay the bid and make a reconveyance on repayment. This agreement was declared to the bystanders at the sale, and competition being thus prevented, the land was bought by the brother for one-tenth of its actual value. The whole transaction was alleged to be " a fraudulent contrivance on the part of the defendant to obtain his brother's land for one-tenth of its value." The court enjoined the defendant from proceeding at law under the title thus fraudulently obtained, saying: " This court has often repeated that the statute of frauds should never be perverted to an instrument of fraud. Thus, in a case of an agreement such as the statute plainly declares void, if not reduced to writing, yet if this was omitted by fraud, the defendant would not be permitted to avail himself of the statute. In *Whitchurch* v. *Bevis* (2 Bro. C. C., 565), Lord THURLOW says, if you *interpose the medium of fraud,* by which the agreement is prevented from being put in writing, I agree the statute is inapplicable. (See *Keith* v. *Purvis,* 4 Dess., 114.)"

In the case cited of *Keith* v. *Purvis,* a creditor induced his debtor's agent not to bid at a sale of his debtor's land by promising to give the debtor time to pay the debt, and then to reconvey the land. This agreement was disclosed at the sale, and prevented other bids, whereby the creditor bought the land at one-third of its value, but afterward refusing to reconvey, the debtor brought his bill for relief. To this it

was objected that the agreement was void by the statute of frauds; but the court held "that if the agreement was void, the creditor must surrender up his advantage under it and be liable to make good the loss sustained by the adverse party from his conduct." "Can it be tolerated," says the court at page 121, "that a creditor shall, at a sale of his debtor's property, lull him to sleep and keep off other purchasers by an agreement under which he buys in the land for a small sum much below the value, and then that he should declare that the agreement was void under the statute of frauds, and that the other party should have no benefit from the agreement, whilst he reaped all the fruits? Surely not. Courts of justice would be blind indeed if they could permit such a state of things."

In *Peebles v. Reading* (8 S. & R., 492), the Supreme Court of Pennsylvania, said: "If by the artifice of the purchaser declaring he was to buy for the owner, others were prevented from bidding, and the land was sold at a great undervalue, this would make him a trustee." And in *Trapnall* v. *Brown* (19 Ark., 49), property of the value of five thousand dollars was, by agreement, similar to the one in the present case, bought in for $176, other persons declining to bid on being informed of the object of the agreement. "Under these circumstances," the court said, "we think it would be a fraud in the purchaser to keep the property in violation of the agreement. That the statute which was designed to prevent fraud would be used as a shield and in the commission of fraud, which the courts of equity will not tolerate. We think, therefore, that the court below did not err in treating the purchaser as a trustee." These observations, made in these cases, are as pertinent to that now under consideration, as they were in them. Many of these cases are identical in all important particulars with this, and there is no good reason why the same rules of law and morals enunciated in them should not govern and control the decision in this case. The fact that an agreement is void, under the statute of frauds, does not entitle either party to relief in equity, but other facts may; and when they

do, it is no answer to the claim for relief, that the void agreement was one of the instrumentalities through which the fraud was effected. (*Ormond* v. *Anderson*, 2 Ball & Beatty, 369.) Where one of the parties to a contract, void by the statute of frauds, avails himself of its invalidity, but unconscientiously appropriates what he has acquired under it, equity will compel restitution; and it constitutes no objection to the claim, that the opposite party may happen to secure the same practical benefit, through the process of restitution, which would have resulted from the observance of the void agreement. (*Floyd* v. *Buckland*, 2 Freeman's Ch. Cas., 268; *Oldham* v. *Litchford*, id., 284; *Devenish* v. *Baines*, Precedents in Ch., 3; *Thynn* v. *Thynn*, 1 Vern., 296; *Reech* v. *Kennygate*, 1 Vesey, Sr., 125; *Davis* v. *Walsh*, 2 Har. & Johns., 329; *Wilcox* v. *Morris*, 1 Murphy's Ch., 116; *Stoddard* v. *Hart*, 23 N. Y., 560.)

It is very clear to my mind, both upon principle and authority, that the referee erred in excluding the evidence offered, and that the judgment must be reversed and a new trial ordered, with costs to abide the event.

PORTER, WRIGHT, LEONARD, and MORGAN, JJ., concurred; PECKHAM, J., did not vote; SMITH, J., having been of counsel, did not sit; HUNT, J., dissented.

Judgment reversed, and new trial ordered.