## PHEBE FOOTE *vs.* EMILY E. FOOTE and others.

It is an established rule of equity, that where trust and confidence are reposed by one party in another, and the latter accepts the confidence or trust, equity will convert him into a trustee, whenever it is necessary to protect the interest of the party so confiding, and do justice between them.

Certain premises were conveyed to the plaintiff's husband, the consideration therefor being mainly paid by the plaintiff. Subsequently, in 1844, for the purpose of protecting the property, and of keeping it for the plaintiff's use, the plaintiff and her husband conveyed the same to S. F. and O. F., without consideration. S. F. then conveyed the same to O. F. without consideration, upon a parol agreement that the grantee should hold the same for the plaintiff's benefit. After the execution of the deed to him, G. F. always recognized, so long as he lived, the fact that the premises belonged to, and were the property of, the plaintiff, and that he held the same simply for her benefit. The plaintiff, with her husband, had for more than 20 years held uninterrupted and undisputed possession of the premises and paid taxes thereon. In 1854, G. F. made a will, by which he devised the premises to the plaintiff. In 1858 he was married to the defendant E. F., and had issue, the defendant C. F., and died in 1864. The plaintiff claimed the premises as belonging to her, in fee, and the defendants claimed that G. F. was the owner thereof, and that upon his death his widow became entitled to an estate in dower therein, and his daughter C. F. to an estate in the remainder, in fee. There were no creditors whose rights were involved.

*Held*, 1. That the transaction was simply the naked transfer of the nominal title of the property to G. F. to be held without interest in him, for the benefit of the plaintiff.

2. That the referee having found, as a fact, that G. F. in taking a deed of the property, intended in good faith to hold it in trust, as the protector of the plaintiff's rights, and only for her benefit, the court would not permit those claiming under G. F. to insist that he held it absolutely as the true and lawful owner.

3. That had G. F., at any time during his life, attempted to dispossess the plaintiff of the estate he so held nominally for her benefit, a court of equity would have restrained him, upon application, and, upon demand, have compelled him to convey the title to her.

4. That the section of the statute relative to fraudulent conveyances, (2 *R. S.* 134, § 6,) which requires that every trust or power over or concerning lands shall be by deed or memorandum in writing, had no application to the case.

5. That it was no objection to the granting of relief to the plaintiff that there was no written agreement between her and G. F. That equity made the latter a trustee *ex maleficio.*

6. That the defendants could interpose no defense of the statute of uses and trusts, or the statute of frauds, that G. F., through whom they claimed, could not set up. That it would be fraudulent in him to deny the plaintiff's

Foote *v.* Foote.

equitable title to the property; and a court of equity would not allow him to set up either of those statutes to be used as instruments of fraud.

Implied and resulting trusts are, from their very nature, excepted from the provisions of the Revised Statutes relative to uses and trusts.

Their existence, generally speaking, can only be established by parol evidence; and it requires the power of a court of equity to compel the performance of such implied agreements, and to protect the rights and interests of the *cestui que trust* therein. This power has, in no respect, been abridged or impaired by the Revised Statutes.

THIS was an action in equity, in effect to remove a cloud from the title to certain premises in Chenango county, claimed to belong, equitably, to the plaintiff, but which were claimed by the defendants to be owned by them under legal title. The action was referred to a sole referee, who reported in favor of the plaintiff. The facts will sufficiently appear in his report, which is as follows:

That previous to the year 1844, the premises described in the plaintiff's complaint were conveyed to Luther Foote, the husband of the plaintiff, and that the consideration therefor was mainly paid by the plaintiff. That on the 2d day of November, 1844, for the purpose of protecting the property and of keeping it for the plaintiff's use, Luther Foote and Phebe Foote, his wife, conveyed the same to Sherman Foote and Oscar J. Foote without consideration. That said deed purported to be for the consideration of $400. That afterwards, and on the 15th day of August, 1849, Sherman Foote deeded the same to Oscar J. Foote, without consideration, for the same purpose; such deed purporting to be for the consideration of $200. That afterwards Oscar J. Foote conveyed the same to Geo. L. Foote without consideration, and with the agreement that he should hold the same for the plaintiff's benefit; the deed was dated October 9, 1850; consideration stated in deed was $335. That after said deed to George L. Foote, he always recognized, so long as he lived, the fact that the said premises belonged to, and were the property of, the plaintiff, and that he held the title simply

for her benefit. That the said Oscar J. Foote and George L. Foote were the sons of the plaintiff. That the plaintiff, with her husband, has for more than twenty years last past held uninterrupted and unindisputed possession of said premises and paid taxes thereon. That about the first day of May, 1854, said George L. Foote made a will by which he devised said premises to the plaintiff. That about November, 1858, said George L. Foote was married to the defendant Emily E. Foote, and afterwards Carrie B. Foote was born of such marriage. That on the 20th of September, 1864, George L. Foote died, in the State of Virginia.

The referee found, as conclusions of law, that the title of George L. Foote to the premises in question, was a nominal title, and that he held the same for the plaintiff, and for her benefit. That the marriage of George L. Foote, and the birth of Carrie B. Foote, worked a revocation of said will. That the defendants had no interest in said premises, except a nominal one. That the plaintiff was entitled to the relief demanded in the complaint, without costs to either party.

From the judgment entered on this report the defendants appealed.

*D. M. Powers*, for the appellants.

*J. W. Glover*, for the respondent.

*By the Court*, POTTER, J. George L. Foote, by agreement, held the premises in question, without having paid any consideration therefor, for the benefit of the plaintiff, the plaintiff originally having paid, mainly, all the consideration that had ever been paid therefor—that is, by paying a mortgage that had been thereon. There are no creditors whose rights are involved in the case. The de-

fendants can claim no better title than George L. Foote
held to the premises.

The defendants now claim that George L. Foote, at the
time of his death, was the lawful owner of the said prem-
ises, and that upon his death, the defendant Emily E.
Foote, his widow, became entitled to an estate in dower
therein, and the defendant Carrie B. Foote to an estate
in the remainder in fee. In pursuance of the agreement
by which George L. Foote held the title, the plaintiff has
been for twenty years in the uninterrupted and undisputed
possession of the premises, exercising acts of ownership
over it, and paying the taxes thereon. And during that
time she was recognized as the owner thereof, by George
L. Foote; he claiming to hold the title simply for her
benefit. In confirmation of this agreement, and of the
right of property in the plaintiff, and to secure the title to
the plaintiff, which he so nominally held, Geo. L. Foote,
before his death, and as it happens, also, before his mar-
riage, made his last will and testament, devising the said
premises to his mother, the plaintiff. Had George, at any
time during his life, attempted to dispossess the plaintiff
of the estate he so held nominally for her benefit, a
court of equity would have restrained him, upon applica-
tion, and upon demand, have compelled him to convey
the title to her. His attempt to do so would have been an
attempt to commit a fraud upon his *cestui que trust*, which
a court of equity would not allow. His widow, and his
heir at law, occupy no better status in court than their
intestate would have done, if living.

This is the rule of law as well as of equity, independent
of any embarrassments arising from the statute in relation
to trusts. It must be remembered that the plaintiff was
not the immediate grantor of George L. Foote, nor does
it appear that the conveyance to him was intended as an
evasion of law, or for an object against public policy. There
was no consideration paid by George, nor any received by

Foote *v.* Foote.

the grantors, his brothers Oscar and Sherman Foote, from anybody. It cannot, therefore, be said that there was any valuable consideration passing between the parties, though the sum of $400 was named in the deed. It was simply the naked transfer of the nominal title of this property to be held by George, without interest in him, for the benefit of his mother, the plaintiff. This was such a title that a judgment against George could not fasten upon it as an effective lien. (*Siemon* v. *Schurck*, 29 *N. Y.* 598.)

The statute by which this trust is claimed to be void is 2 *Revised Statutes*, (*marg. p.* 134, 135, § 6,) which requires that every estate or interest in lands, or any trust or power over or concerning lands, shall be by deed or memorandum in writing, to be subscribed by the party creating, granting, assigning, surrendering or declaring the same. But the 7th section of the same statute declares that the preceding 6th section shall not prevent any trust from arising by implication or operation of law. The 6th section has, therefore, no application to the case in question.

But by the statute of "uses and trusts," *implied* and resulting trusts are not included in, or affected by, the provisions of that article; it does not extend to them. (1 *R. S.* 728, § 50.) They are, and must necessarily be, excluded, from their very nature. (*Astor* v. *L'Amoreux*, 4 *Sandf.* 524, 529.) Their existence, generally speaking, can only be established by parol evidence; and it requires the power of a court of equity to compel the performance of such implied agreements, and to protect the rights and interests of the *cestui que trust* therein. This power has in no respect been abridged or impaired by the Revised Statutes. It is an established rule of equity, that where trust and confidence are reposed by one party in another, and such other accepts the confidence or trust, equity will convert him into a trustee, whenever it is necessary to protect the interest of the party so confiding, and do justice between them.

We cannot doubt, if we advert to the circumstances under which George L. Foote took the conveyance of this property, viz: the habits of the father—the industry, the means possessed by the mother—and the desire of the whole family to place the title where it could be preserved from being squandered or lost—his paying no consideration therefor—declaring, for a period of twenty years, that he held it for the benefit of his mother—allowing her all that time to enjoy its use, to pay its taxes—calling it her property—making his will and devising it to her; I say we cannot doubt that he intended in good faith to hold it in trust, as the protector of her rights, and only for her benefit. If this is the fair conclusion from the facts, this being the conclusion of fact of the referee, we cannot now permit those who claim under him to insist that he, George L. Foote, held it absolutely as the true and lawful owner.

If we are right in the views we have taken of this case, it is no objection that there was no written agreement between George L. Foote and his mother, the plaintiff. The law of equity makes him a trustee *ex maleficio.* (*Ryan v. Dox,* 34 *N. Y.* 307.) The defendants can interpose no defense of the statute of uses, or the statute of frauds, that their predecessor in the title could not set up. It would be fraudulent in him to deny his mother's equitable title to this property; and a court of equity would not allow him to set up either of those statutes to be used as instruments of fraud. (*Ryan v. Dox, supra.*)

The various objections to parol proof of this trust, and exceptions taken to their admission, were not well taken. The objection taken to the testimony of Oscar Foote, on the ground that he was an assignee of the property in question—however good it might be if standing alone—is not sufficient cause for reversing the judgment. The fact testified to by him was abundantly proved by other witnesses, and there was no controversy about the facts, and

no conflict requiring facts to be weighed. The defendants offered no evidence.

The judgement should be affirmed, with costs.

[THIRD DEPARTMENT GENERAL TERM, at Plattsburgh, July 5, 1870. *Miller*, P. J., and *Potter* and *Parker*, Justices.]