AARON MOYER, Respondent, v. SIMPSON MOYER, Appellant.

21  67
69  577
21h  67
169 NY¹562

*Conveyance of property, upon a verbal trust—when a court of equity will enforce its performance—admissibility of oral evidence, as to the directions given by the grantor—when the testimony of the grantee is inadmissible after the death of the grantor.*

For some years prior to September, 1859, one Simpson Moyer owned and occupied, with his wife and family, a farm of about one hundred acres, which was then worth about $3,500, but was subject to a mortgage of $1,500. Moyer had then living thirteen children, of whom only one, a son, was of full age and resided in the vicinity. Moyer, being far gone in his last sickness, and desiring to provide for his infant children, executed and delivered a deed of the farm (which was substantially all his property) to his said son, the defendant, upon the verbal understanding and agreement, that the farm should be kept and held, by the latter, as a home for the family during the minority of the children, and that when the youngest child should come of age, it or its proceeds should be divided among all of them. No consideration was paid by the defendant, nor did he agree to pay any.' The father furnished the money to pay for recording the deed, and continued to occupy the farm until the time of his death, which occurred about ten days after the deed was made. After the father's decease the family continued to occupy the farm, paying the taxes, and the interest upon the mortgage, keeping the farm in repair, and making some improvements of a permanent nature. The defendant was never in possession of any part of the farm, nor did he ever receive the rents or profits thereof. The defendant having repudiated the trust upon which the farm was conveyed to him, and claimed to be the sole owner thereof, this action was brought by one of the children to have it adjudged that he held the farm as a trustee for the surviving children, and to compel him to convey to them their respective shares therein.

*Held,* that the action was properly brought and could be maintained.

*Held,* further, that there was no error in admitting oral evidence of what took place in the sick room, when the father caused the deed to be delivered and gave directions as to the recording of it, and advanced the money to pay for so doing.

*Held,* further, that the testimony of the defendant as to what then took place was properly excluded under section 829 of the Code of Civil Procedure.

APPEAL from a judgment in favor of the plaintiff, entered on the report of a referee. The action was brought to enforce an oral trust, upon which, it was claimed, a farm had been conveyed to the defendant. The referee found that the defendant was a trustee *ex maleficio,* and ordered a conveyance to the plaintiff of an un-

divided tenth interest in the lands described in the complaint, subject to the dower of Catharine Moyer, and subject to her life estate in three thirteenths, and subject to an equivalent portion of an outstanding mortgage of $1,500.

In September, 1859, Simpson Moyer, the father of the defendant, who owned the lands in question, died intestate, leaving his widow Catharine and thirteen children him surviving. Three of the children have since died intestate, and without issue. In 1859 the lands were worth about $3,500, and were subject to the said mortgage. They are now supposed to be worth about $6,000.

The answer did not allege any payment by defendant for the land, and admitted that he was not in possession of it. The evidence tended to establish that he paid no consideration for it, notwithstanding the recital of a consideration in the deed, by the father to him.

The referee made the following among other findings, viz. :

Fourth. For several years prior to his death, Simpson Moyer had owned and occupied a farm of one hundred acres of land in the town of Lewiston, worth at the time of his death about $3,500, but incumbered by a mortgage, payable in gold coin, for $1,500, and this farm was substantially all his property.

Fifth. About ten days before he died, Moyer sent for the defendant, who was the only one of his sons of full age, living in the vicinity, and delivered to him a deed in fee of the farm which had been prepared and executed by Moyer, and acknowledged in December, 1857, for some other purpose, but never delivered.

The deed was in the usual form of a deed of bargain and sale, expressed a consideration of $5,000, was made subject to the mortgage of $1,500, and contained a covenant of warranty. The defendant, at Moyer's request and by his direction, put the deed upon record, and the grantor furnished the money to pay for recording the same.

No consideration for the conveyance was ever paid by the defendant or any other person, and there was no agreement or undertaking by the defendant or any other person to pay anything for the conveyance, except what was implied from the deed.

The defendant was never in possession of any part of the property conveyed, and never received the rents or profits of the same.

Sixth. At the time the conveyance was made, and the deed delivered, Simpson Moyer, the grantor, was far gone in his last sickness, and was acting in anticipation of approaching death, and the sole object of delivering the deed to the defendant, as then verbally expressed by him, and understood by the defendant, was that the farm should be kept and held as a home for the family during the minority of the then infant children, for their use, and at the majority of all of said last-named children, to be divided or sold, and the proceeds divided among all of his children, and that the defendant, fully understanding the purpose and intent of their father, then agreed verbally to take and hold the title of the farm for that purpose and no other, and then, and for many years thereafter, intended so to take and hold the title of said farm; that the defendant at the time knew and understood that the deed was not prepared for the purpose then contemplated, but both he and his father believed that the whole transaction was effectual to secure the object then intended.

Seventh. That Simpson Moyer, the deceased, continued to live upon and occupy the farm till his death, about ten days after the deed was delivered, and his widow, his second wife, and her children have continued to occupy the farm as a home, paid the taxes upon it, paid the interest upon the outstanding mortgage, kept the farm in ordinary repair, made some improvements of a permanent nature, until the present time, substantially in compliance of the expressed wishes of the deceased Moyer, made known to them, and to the defendant, by him at the time he delivered the deed to the defendant; and the defendant and all the other children acted upon the assumption that the transactions, intentions, and understandings at the time the deed was delivered were valid, and were to be carried into effect, and that the defendant held the title, as intended by his father, as aforesaid, and for no other purpose, until some time in the year 1873, when the defendant repudiated all rights of the plaintiff, and the other members of the family in the premises, and insisted and claimed the said land absolutely, under said deed, and is now

taking proceedings to recover the possession of the same from the plaintiff.

Eighth. That the said deed, although purporting to be a deed from Simpson Moyer, Sr., and Catharine Moyer, his wife, was not executed by the said Catharine, and she now has a dower estate in said lands, and said mortgage of $1,500 is still outstanding. That at the time of the death of Simpson Moyer the said farm was worth about $3,500; the average rental thereof since that time, exclusive of taxes, has been about $200; and the present value of the farm is about $6,000.

Ninth. That at the time said deed was delivered the defendant understood that his father reposed confidence in him, and with that understanding accepted the conveyance and the confidence of his father, but that no part of the transaction was evidenced by any writing, except the said deed

*Murray & Greene*, for the appellant.

*Farnell & Burrell*, for the respondent.

HARDIN, J.:

There was evidence tending to support all the findings of fact made by the referee, and we do not see any occasion to disturb the report in respect to the facts found.

It must be assumed that the parol agreement in respect to the lands was void at law and in equity. (*Wheeler* v. *Reynolds*, 66 N. Y., 236; *Morrill* v. *Cooper*, 65 Barb., 519; *Lathrop* v. *Hoyt*, 7 id., 59.)

If the plaintiff's case rested alone upon a parol promise to hold the property until the youngest child of his father should become of age, and then convey it to the children, we should be called upon to say that a court of equity had no jurisdiction to give relief, and that on the law side of the court the plaintiff was without remedy. Such seems to be the doctrine of the cases already cited.

The same principle is declared by OSBORN, J., in *Hurst* v. *Harper* (14 Hun, 282). That latter case is pressed upon us by the learned counsel of the appellant as decisive of this case. But we think

that case differs from this in one or two important particulars. In that case the plaintiff had purchased the property, and put the title in Harper, for some purpose not clearly defined. "There was no evidence of any agreement to re-convey." It was held, therefore, that the statute of uses and trusts forbade the granting of any relief in that case, and that the plaintiff having furnished the money to pay for the lands and taken the title to them, in Harper, she acquired no interest in the land nor in the surplus arising from the sale thereof upon a mortgage.

In the case before us it clearly appears from the finding of the referee, that Moyer, senior, was aware that his death was near at hand, and that he understood that if he died intestate the farm owned by him would descend to his thirteen children, subject to the dower right of his wife, and that he was aware that it would pass immediately upon his death to his heirs-at-law.

Having helped the older children some, it was not supposed equitable that the property should thus pass, and he desired to have it kept together as a home for his widow and the younger children until the majority of the youngest child. He so stated, and asked the defendant if for such purpose he would take the title and convey it over, upon the happening of the majority of the youngest child. The defendant assented to the arrangement, recognized it after his father's death, and allowed the widow and her younger children to remain in possession until 1873, some fourteen years, without making any claim to the contrary. They made some substantial improvements, and made expenditures upon the lands, paid the taxes thereon, and kept down the interest upon the $1,500, in the faith that such agreement was to be kept and fulfilled by the defendant. Without such an agreement, it must be assumed that the defendant would not have received the title to the lands, then worth some $3,500, subject to the mortgage of $1,500. If the defendant was allowed to take possession and title to the lands and hold the same, discharged of any interest therein of his brothers and sisters, having paid nothing therefor, he would accomplish a fraud. To prevent such fraud, equity may take jurisdiction.

In *Wheeler* v. *Reynolds, supra.* EARL, J., says, "But in

cases of *fraud*, courts of equity will sometimes imply a trust, and will treat the perpetrator of the fraud *as a trustee ex maleficio*, for the purpose of administering a remedy against the fraud. For the same purpose it will take the trust which the parties have attempted to create and *enforce* it, and in such a case the *fraud*, not the parol agreement, gives the jurisdiction." This comports with the doctrine of *Ryan* v. *Dox*, 34 N. Y., 307, and with *Cipperly* v. *Cipperly*, 4 Sup. Ct. (T. & C.) 346, and cases there cited. The ground stated for the jurisdiction of the court is likewise stated in *Freeman* v. *Freeman*, 43 N. Y., 35; and in that case a promise to give a life estate in the lands, which had been relied upon by taking possession, partially clearing the lands (as in this case) and making other improvements, was enforced "to prevent a fraud from being practiced." GROVER, J., delivered the opinion in the case last cited, and also the opinion of the court in *Levy* v. *Brush*, 45 N. Y., 589, and in distinguishing the case then before the court from the principle enunciated in *Ryan* v. *Dox*, *supra*, and in *Freeman* v. *Freeman*, *supra*, he says: "But where the party seeking performance has partly performed, or has, as in the case of *Ryan* v. *Dox*, parted with valuable property upon the faith of the contract, the case is different. *In such cases equity will not permit a party* to retain property obtained *on the faith of a verbal contract* to consummate a fraud by retaining the property and *refusing to perform the contract.*"

POTTER, J., in *Foote* v. *Foote* (58 Barb., 258), reaches a similar conclusion, and declares that the sixth section of the statute relative to fraudulent conveyances (2 R. S., 134, § 6) has no application to such a case, and that resulting trusts are excepted from their nature from the provisions of the Revised Statutes as to uses and trusts.

When *Foote* v. *Bryant* was affirmed in the Court of Appeals (47 N. Y., 547), CHURCH, Ch. J., said: "Implied trusts, or those arising by operation of law, are *not included* in the prohibition" of the sixth section of the Revised Statutes; and he adds: "This statute does not preclude a party from establishing any implied or resulting trust known or recognized by the common law.

" They arise usually from the *acts* or relation of the parties to the property involved, and not upon parol agreements. . . .

" The transactions on which a trust of this character arises may be *proved by parol,* but the *trust itself* must rest upon *the acts* or situation of the parties *as proved,* and not merely upon their declarations. The statute embraces only trusts which *are created* or *declared* by the *parties.*"

Consistent and similar doctrine was stated by BOCKES, J., in delivering the opinion of the General Term of the Fourth District in 1868, in *Hobbs* v. *Weatherwax* (38 How., 385), and by JOHNSON, J., in *Carpenter* v. *Ottley* (2 Lans., 451 ; see *Hensler* v. *Sefrin,* 19 Hun, 564.)

The authorities quoted, happily, lead us to sustain the judgment in this case. It would be a sad commentary upon the justice of the law if we were obliged to apply a statute passed to prevent fraud and perjuries to a case like this, and defeat the object of an afflicted man about to leave the world, and anxious to provide equitably for those dependent upon him and his little accumulations, and reverse his intent to fulfill " the moral obligations of a parent to provide for his children," as STORY expresses it in section 1,203 of his Equity Jurisprudence.

There was no error in admitting the oral evidence of what took place in the sick room of the father when he caused the deed to be delivered, and gave directions for, as well as advanced, the money to pay for its recording. Nor was there any error committed in excluding the defendant from testifying to what took place in the presence of his father on September 16, 1859, in relation to the delivery of the deed. It involved a personal " transaction or communication between the witness and the deceased person," his father, " from, through or under whom " he derived his interest or title. (*Kraushaar* v. *Meyer,* 72 N. Y., 602 ; *Fisher* v. *Verplanck,* 17 Hun, 151 ; *Titus* v. *O'Connor,* 18 Hun, 373 ; § 829, Code Civ. Pro.; *Pursell* v. *Fry,* 19 Hun, 595).

The conclusion reached by the referee accords with equity and justice, and the judgment entered upon his report should be affirmed, with costs.

TALCOTT, P. J., and SMITH, J., concurred.

Judgment affirmed, with costs.