(85 Misc. Rep. 503)

### BECKER v. BUFFALO PACKAGE CO. et al.

(Supreme Court, Special Term, Erie County. May, 1914.)

1. SPECIFIC PERFORMANCE (§ 41*)—ORAL CONTRACT—RIGHT TO RELIEF.

   A court of equity may compel specific performance of a partly performed oral contract, where there is a fiduciary relation or the court's aid is necessary to prevent fraud or injustice.

   [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 120–123; Dec. Dig. § 41.*]

2. SPECIFIC PERFORMANCE (§ 121*) — ORAL CONTRACTS — SUFFICIENCY OF EVIDENCE.

   Evidence, in an action to require a corporation, which was organized pursuant to an oral contract by which plaintiff and her husband were to secure the assignment to defendant of the plant and property, other than bills receivable, of a corporation organized by them, to perform its agreement to transfer to them as the consideration 180 shares of stock, held to establish plaintiff's right to only 70 shares of such stock.

   [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 387–395; Dec. Dig. § 121.*]

3. COSTS (§ 32*)—TAXATION.

   Where the plaintiff in an action for specific performance of a contract did not limit her demand to the 70 shares of stock for which she recovered judgment, but tendered other issues which were the basis of the litigation and upon which she did not sustain the burden of proof, she was not entitled to costs, nor should she be required to pay costs.

   [Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 108–132; Dec. Dig. § 32.*]

Action by Martha G. Becker against the Buffalo Package Company and others to compel specific performance of a contract. Judgment for plaintiff.

Dana L. Spring, of Buffalo, for plaintiff.
Vernon Cole, of Buffalo, for defendants.

LAUGHLIN, J. The plaintiff, alleging performance on her part and on the part of her husband, whose rights have been assigned to her, of a contract resting in parol, by which she and he were to secure the conveyance and assignment of the plant and property, other than

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bills receivable, of the Buffalo Pail & Barrel Company to another corporation to be formed, and pursuant to which agreement the defendant company was incorporated, brings this suit in equity to compel specific performance of the contract with respect to the consideration she and her husband were to receive, consisting of 180 shares of the capital stock of the new company.

[1] It is within the jurisdiction of a court of equity to enforce performance of an oral contract partly performed, against the party in default, where there is a fiduciary relation, or the interposition of the aid of the court is necessary to prevent fraud or injustice. I therefore find no difficulty in deciding what the law of the case is; but the claims of the parties with respect to the facts depend upon conflicting evidence and are diametrically opposed.

[2] The plaintiff and her husband were copartners in the business of manufacturing wooden pails, barrels, and other receptacles, and on the 7th day of September, 1907, they organized and incorporated under the laws of the state of New York, the Buffalo Pail & Barrel Company, with a view to taking over the business; but that was not consummated then, for it was not until December 29, 1910, that the property was assigned and conveyed to the company for capital stock which was issued to the extent of $13,000, par value, of which $11,000 was issued to the Beckers and $1,000 to their attorney, and the other $1,000 to Dudley.

The business was not successful, and in the fall of 1912 the corporation was becoming financially embarrassed and the foreclosure of two mortgages on its plant was threatened. The plaintiff interested one Fiske in an endeavor to procure further capital for the business. His efforts in that regard were unsuccessful, but he succeeded in interesting the defendants Dold and Barnard in a proposition for the investment of an equal amount of money by himself and each of them in a reorganization scheme for the development and extension of the business, under which he was also to give his time and attention to the business, as he had some knowledge thereof and experience therein, and they were without either. On the 12th of February, 1913, the plaintiff, her husband, Fiske, Dold, and Barnard met and agreed upon a reorganization plan by which a new corporation to take over the business was to be organized, with an authorized issue of $75,000 of capital stock, only $50,000 of which was to be issued in the first instance, and $18,000 of it was to be issued to plaintiff and her husband for their interest in the Buffalo Pail & Barrel Company, to be assigned and conveyed, and $32,000 was to be issued to Fiske, Dold, and Barnard in equal shares, and they were to contribute to the business $5,000 each in cash. It was understood by all parties that Fiske, who was better known to plaintiff than to the others, was not then in a position to put up his share of the cash contribution, as his bank to which he had applied for credit had not heard from an out-of-town reference for an indorsement of his note; but it was confidently believed by him and by the others that funds would be available to him before the property of the Buffalo Pail & Barrel Company was sold under a foreclosure judgment upon which it had been advertised for sale, and the

sale adjourned until February 13, 1913. On the 13th. Fiske had not procured the money, and the parties in interest secured an adjournment of the sale for one day. Fiske was unable to procure funds on that adjourned day, and decided to drop out and to take no further part in the reorganization of the business, and to go south that night on a protracted trip, and so notified the other parties in interest. The plaintiff and her husband had been endeavoring, through brokers, to obtain a loan to take up the mortgages, and obtain further funds by a sale of capital stock of the old company, and negotiations in both directions had apparently succeeded and it remained only for them to be consummated. The plaintiff and her husband, however, then preferred the reorganization scheme, and so confident was Barnard that it would go through that on the 12th day of February he encouraged and advised the plaintiff and her husband to cancel and abandon all other negotiations, and that was done.

When Fiske decided to drop out, it was not claimed on the part of plaintiff or her husband, and it was not contended on the trial, that Dold and Barnard, who were in funds, agreed or were under any obligation to carry the enterprise through by putting up Fiske's share. It is conceded by the learned counsel for the plaintiff that, when it became known that Fiske could not meet his obligation, both Dold and Barnard were at liberty to withdraw without incurring any liability to the Beckers. He, however, argues, with much plausibility, that Dold and Barnard could not, in the circumstances, remain interested in and assist in the purchase of the property without remaining liable to the Beckers for the performance of the original agreement, made upon the expectation that Fiske was to take an interest and to become actively identified with the enterprise. And in that connection he also contends that they consummated the undertaking without any new agreement. These contentions are predicated, in part, upon the fact that the Beckers were thus encouraged and advised to drop negotiations for obtaining money from other sources, and that relying upon the reorganization agreement they did abandon such negotiations, and that the time until the foreclosure sale that afternoon was too short to enable them successfully to resume such negotiations.

If there was no obligation on the part of Dold and Barnard to bid in the property on the foreclosure, or to put up money for themselves and Fiske to satisfy the judgment before the sale, as seems to be conceded, I fail to see why they were not at liberty, in equity and good conscience, to negotiate a new contract with the Beckers for a reorganization on a different basis, which is precisely what they did according to the preponderance of the evidence. Of course, a court of equity will not permit a party to induce an interested party to refrain from bidding on a sale of property and then to repudiate the agreement he made by which he was enabled to purchase it, and will in such case imply a trust and decree that he holds the property under a constructive trust for the benefit of the party he induced to refrain from bidding (see Ryan v. Dox, 34 N. Y. 307, 90 Am. Dec. 696; Traphagen v. Burt, 67 N. Y. 30); but the facts render the rule inapplicable here. It is not claimed that there was any actual fraud; but it is urged that

there was constructive fraud in taking advantage of the inability of the Beckers, in the circumstances, to protect themselves against the foreclosure sale. It is not claimed that either Dold or Barnard was in the least responsible for Fiske's dropping out; and there is no evidence that the Beckers would have been any better off if Barnard had not bid in the property pursuant to the new agreement. Since therefore, under the original agreement, Dold and Barnard were under no obligation at the time of the sale to purchase the property or to bid at all, there is no basis for holding that they were guilty of constructive fraud in purchasing the property at the foreclosure sale pursuant to a new agreement made between them and the Beckers after Fiske retired from the venture, as already stated. Immediately prior to the sale under the foreclosure judgment and after all efforts to adjourn the sale, as desired by plaintiff, were exhausted, a new agreement was negotiated between Dold, Barnard, Mr. Becker, and the plaintiff, who was represented both by her husband and by her duly authorized attorney, by which Dold and Barnard were to contribute to a new corporation to be organized, in equal shares $15,000, and were to purchase the property at the foreclosure, and each of them was to receive 140 shares of the capital stock of the new corporation, and the Beckers together were to receive only 70 shares. The amount of capital stock to be issued under the new agreement was only 350 shares, of the par value of $100 each. This reduction of the amount originally agreed upon was made on the ground that Dold and Barnard were of opinion that the property had been considerably overvalued. Dold and Barnard made it perfectly plain at that time that they would go no further under the original reorganization plan, and would not purchase the property unless it was clearly understood that the original agreement was to be deemed abandoned and the new one substituted, and that was acquiesced in by the plaintiff's husband, and by her through him and her attorney, and Barnard was thereby induced to purchase the property, and he and Dold were induced to and did contribute to the enterprise in cash the sum of $15,000, $5,000 of which was paid on taking title at the foreclosure sale; and in addition thereto they have loaned the company as much more.

The certificate of incorporation of the defendant company was filed with the Secretary of State on the 28th day of February, 1913, and with the county clerk on the 3d day of March thereafter. On the 13th of March Barnard assigned and conveyed the property he purchased on the foreclosure to the new company, and on the same day the old company executed and delivered to the new company a bill of sale of the remaining property embraced in the agreement.

The defendant company has at all times been ready and willing to issue, on account of the interest of the Beckers, its capital stock to the extent of $7,000, par value, and it caused to be prepared and offered to Becker a certificate therefor upon the theory that it was understood that the stock should be issued in his name. That arrangement, however, was not binding upon the plaintiff; and, moreover, she had in the meantime acquired all of her husband's rights.

[3] I am of opinion that the plaintiff has failed to establish a right

to more than 70 shares of stock, but she was and is entitled to have it issued to herself. She did not confine her demand to that amount, but tendered other issues which have been the basis of this litigation and upon which she has not sustained the burden of proof. In these circumstances the plaintiff is not entitled to recover costs, but she should not be required to pay costs.

Let judgment be entered, therefore, requiring the defendant corporation to cancel the certificate for its capital stock issued in the name of Becker, and issue and deliver to the plaintiff a certificate for 70 shares, but without costs.

Judgment accordingly.