CHURCH v. KIDD.

*Practice — review at general term upon case and exceptions pursuant to Code § 268 — diligence required to entitle party to such review — Statute of frauds — when contract relating to real estate may be shown by parol — Witness — personal transaction with deceased person — Appeal — judgment in equity action affirmed when substantial justice has been done notwithstanding technical error — Interest — when not allowable — Acquiescence.*

The object of the provision of section 268 of the Code that when the decision filed under section 267 does not authorize a final judgment, but directs further proceedings before a referee or otherwise, either party may move for a new trial at the general term upon a case and exceptions is to facilitate proceedings and save the labor and expense of a reference until the case can be

reviewed at general term on the questions decided, and the party desiring the benefit of the provision should be diligent in seeking its advantages Accordingly, where the motion was not made until two years after a judgment and until after the reference had been had and the report made; *Held*, that the motion should not be entertained.

In an action by C., who claimed a reversionary interest in certain leases, against K., and the representatives of P., who held the absolute title to the leases, and other defendants, who had made advances on their security, it was claimed that K. and P. had purchased the leases for the benefit of C. in fulfillment of a contract between C. and the former owner of such leases which C. was unable to complete. *Held*, that parol evidence was admissible to establish the rights of plaintiff in the leases and the agreement between K., P., and C.

There is a distinction between a case where a party has an interest in the property to be protected when the conveyance thereof is made, and one where a party has no such interest. In the latter case the case would fall within the statute, but in the former he will be protected in his rights although the agreement between him and the person taking title rests in parol.

*Held*, also, that C. was not incompetent under section 399 of the Code as against K. to testify to personal transactions between K., P., and himself, it appearing from the conveyance to them that K. and P. were not partners but tenants in common of the leases.

Where it appears in an equity action that substantial justice has been done between the parties the court will look at the entire case and affirm the judgment notwithstanding the admission of testimony which in ordinary actions at law might have necessitated a new trial.

It was agreed that the defendants advancing money should receive a bonus of fifty per cent on their advances besides interest. *Held*, that on the absence of a special promise by plaintiff no interest could be recovered on the bonus. *Held*, also, that where interest had been paid on the bonus without objection on the part of plaintiff he could not recover it back or be allowed for it in the accounting.

MOTION for a new trial on a case and exceptions, under section 268 of the Code of Procedure. The motion is made by the defendants, other than the representatives of Mr. Cagger's estate. The latter do not join in the motion. The action was brought by Walter S. Church against James Kidd and others for the purpose of having the rights of the plaintiff declared and decreed in certain leases, title to which was originally taken by James Kidd and Peter Cagger, and which title was, at the time of commencing the action, in Mr. Kidd and the heirs of Mr. Cagger, then deceased. An accounting was also demanded.

The defendants, other than Mr. Kidd and the representatives of Mr. Cagger's estate, were made parties because of their claims for

the repayment of advances made by them on the security of the leases, under contracts with Kidd and Cagger.

The court found as facts that in 1853 Stephen Van Rensselaer, who then owned certain leases, by two contracts agreed to sell and convey to plaintiff and one Tyler a large number of leases in consideration of certain payments to be made by Tyler and plaintiff. In 1855 Tyler assigned his interest to plaintiff. Upon the contract large sums were paid to Van Rensselaer. In the month of February, 1862, there was a large amount due to Van Rensselaer over and above what had been paid, and for the purpose of making a payment upon said agreement and for the purpose of obtaining an extension of time of the payment of the balance, plaintiff applied to Peter Cagger and James Kidd and an agreement was made whereby Cagger and Kidd were to procure the money necessary to assist plaintiff, for which service plaintiff agreed to pay them a certain compensation. In pursuance of this and other agreements the leases mentioned in the contract to Kidd and Tyler were conveyed by Van Rensselaer to Kidd and Cagger.

At the time of making the agreement between Kidd, Cagger and plaintiff, and for the purpose of carrying it out Cagger and Kidd obtained advances from a number of other persons upon the security of the leases agreed to be conveyed by Van Rensselaer. These parties or their personal representatives were made defendants in this action.

Issue being joined, all the defendants having appeared and answered, the case was tried by and before Mr. Justice INGALLS at special term, without a jury. He found and decided all the material issues of fact in favor of the plaintiff; and on the 26th of August, 1872, the interlocutory decree made by him was entered, whereby the rights of the parties in and to the leases were declared, and a reference was ordered to take and state the account, as regarded the collections upon the leases and the payments made to the defendants on their advances, and with a view to the entry of final judgment in the action.

The parties thereupon proceeded with the accounting before the referee, and that officer has made his report, whereon final judgment may now be entered at any time on due application to the court at special term. In the meantime a case with exceptions has been made and settled, embodying the evidence and proceedings before Mr. Justice INGALLS, with his decision of the case on the

interlocutory order or decree. The questions arising on this motion fully appear in the opinion.

*Van Alstyne & Hevenor* and *Amasa J. Parker*, for plaintiff.

*George W. Miller*, for defendants Kidd and Pumpelly, upon the admissibility of parol evidence to establish the agreement, cited 2 R. S. 135, § 6 ; *Levy* v. *Brush*, 45 N. Y. 589 ; *Ryan* v. *Dox*, 34 id. 307.

*Lyman Tremain*, for estate of Dean Richmond, as to the motion for a new trial being a proper mode of reviewing the case on its merits, cited Code, § 268 ; *Stanton* v. *Miller*, 1 N. Y. Sup. 23. As to the admission of parol evidence, cited *Botsford* v. *Burr*, 2 Johns. Ch. 409 ; *Bartlett* v. *Pickersgill*, 4 East, 577, note ; *Barnet* v. *Dougherty*, 32 Penn. St. 371 ; *Nixon's Appeal*, 63 id. 279; *McGinity* v. *McGinity*, 63 id. 38, 44 ; *Todd* v. *Campbell*, 32 id. 250, 252 ; *Swinburne* v. *Swinburne*, 28 N. Y. 571 ; *Lounsbury* v. *Purdy*, 18 id. 515.

*Marcus T. Hun*, for defendant Austin.

*Samuel Hand*, for defendants Caggers.

BOOKES, J. This motion is made under the clause of section 268 of the Code which provides, that when the decision filed under section 267 does not authorize a final judgment, but directs further proceedings before a referee or otherwise, either party may move for a new trial at general term, and for that purpose may, within ten days after notice of the decision being filed, except thereto, and make a case or exceptions as in said section is provided in case of an appeal. This case fell within the clause of section 268, above cited, and the defendants had the right, consequently, to make a motion for a new trial at general term on a case and exceptions. *Stanton* v. *Miller*, 1 N. Y. Sup. 23. But it is insisted that they were bound to diligence, and should have made the motion before proceeding with the reference directed by the interlocutory order. The clause of section 268, giving the right to make this motion, was introduced into that section by amendment in 1867. Its object was to facilitate proceedings, and more particularly to save the

labor and expense of the reference until the case could be reviewed at general term on the questions, which, as decided, constituted the basis of that proceeding. In *Stanton* v. *Miller, supra,* Judge TALCOTT says that the amendment of 1867 was adopted to avoid the delay and expense of the further contemplated proceedings, which would be useless if it should turn out that any error had been committed on the trial, or in the interlocutory decision; and he adds, that to proceed with the trial of the matters referred, "would involve much expense and delay, the whole of which would have been uselessly incurred, if it should turn out that the justice at the circuit had erred in the admission or exclusion of evidence, or in his findings of fact or conclusions of law."

In this case over two years have elapsed since the interlocutory decree was made and entered, and the parties have gone on with the reference before the referee to its termination; that officer has made his report and the case is in readiness for the entry of final judgment. It was to save the labor and expense attending the reference anticipatory of a reversal of the interlocutory decree, that the privilege was given to parties at this stage of the case to make the motion. If nothing was to be gained, either in dispatch or in the avoidance of labor and expense, there was no necessity for the amendment introduced into the Code in 1867; for parties might secure all that could be attained by the motion on appeal after final judgment. Here, as it appears, the labor and expense of the reference has been incurred, and now to entertain the motion, at this late day, and in the present condition of the case would be to allow a practice subversive of the purpose which induced the amendment, pursuant to which this proceeding is taken. The party desiring the benefit of this provision should be diligent in seeking its advantages. If he lie by until they are lost, the motion is without merit. Therefore laches unexcused, and especially the proceeding with the reference to its conclusion, should, in consideration of its object, be deemed a waiver of the right to the benefits of this provision. Otherwise the whole purpose of it is defeated. Nor can it be urged that action on the order of reference could not be avoided if the adverse party insists on proceeding; for a stay would be granted by the court, when it should be made to appear that there then was an intention to make the motion so soon as the case and exceptions were settled; and that the party was acting in good faith, with no purpose to cause unnecessary delay. I am of the opinion that the

defendants, under the circumstances of this case, might well be held to have lost their right to make this motion, because of the unexcused delay; and for the further reason that it is not made until after the reference under the interlocutory order has terminated and the referee has made his report.

But the motion has been fully argued on the merits, and the counsel for the defendants expressed apprehension lest their case might be, in some way, imperiled, unless the question involved in it should be considered on this application. We have, therefore, concluded to disregard the objection, above suggested, to the hearing of the motion, and the case will be examined as presented, on the proof and exceptions.

In the examination of the questions presented on this motion, it will be necessary to consider them with reference to the defendants separately, to some extent, inasmuch as they are not all affected by them alike. The position of the defendants, Kidd and the representatives of Cagger's estate, is quite different from that of the other defendants. The former defendants have the legal title to the leases in controversy, and contest the plaintiff's right to any interest whatever in them. The other defendants are only interested to protect their rights as advancers of money on the security of the leases, which rights are not disputed by any one, except as regards a claim by them for an allowance of interest. It may be well, therefore, to examine the case, first, as between the plaintiff and the defendants, Kidd and the representatives of the Cagger estate.

The plaintiff in his complaint charged that he had a reversionary interest in the leases in controversy, which were conveyed by Mr. Van Rensselaer to Kidd and Cagger and which were held by them under an absolute conveyance in fee. This averment, as regarded the plaintiff's right to the lease, was denied by the defendants, Kidd and the heirs at law and personal representatives of Cagger. The learned judge on the trial found in favor of the plaintiff on this issue. He found and decided that the leases in controversy were the property of the plaintiff, subject to the payment to the defendants of certain moneys in the findings specified ; that Kidd and Cagger held them as trustees of the plaintiff, for the purpose of paying and satisfying those moneys, and that Kidd and Cagger were bound to convey and deliver them to the plaintiff with the moneys due and to grow due thereon, so soon

as the several amounts secured thereby should be paid, either by collections therefrom, or by the plaintiff from his own funds. These findings, inserted in the record at length and in due form, are challenged as unsupported, both in fact and law.

The first question which here arises is as to the character of the evidence by which the plaintiff sought to establish his alleged right in the leases, which were held by Kidd and Cagger by absolute conveyance. The conveyance of the leases to the parties last named neither stated nor intimated that the plaintiff had, or was to have, any interest in the property thereby conveyed. It was in form a simple and absolute conveyance of the leases to Kidd and Cagger, with all rights growing, or to grow, out of them. Nor was there any paper executed and delivered by Kidd and Cagger to the plaintiff, expressly declaring his rights as charged in the complaint, and found by the learned judge on the trial. But the evidence given to establish the plaintiff's claim rested in parol. It consisted of oral statements of the parties, and of memoranda, letters, receipts and recitals in instruments, executed by those defendants, which tended to establish the plaintiff's right to the leases substantially as averred in the complaint. The judge held this evidence competent, and gave it effect. It is insisted that the plaintiff's alleged rights in the leases could not be established by such evidence ; that its admission was erroneous, and the effect given it was in disregard of the statute of frauds. 2 R. S. 134, § 6.

It is answered that the case is in principle like that of *Ryan* v. *Dox*, 34 N. Y. 307. In that case it was held that when a party takes an absolute conveyance of real property, at the request and for the benefit of another, who at the time has an interest therein to be protected, he will be deemed the trustee of the party for whom he undertook the purchase, and on tender to him of the purchase-money and interest, he will be compelled to convey the property to the one equitably entitled to it ; and further, that such equitable right may be established by parol.

The soundness of this decision has been repeatedly recognized ; and especially is it recognized in the recent case of *Levy* v. *Brush*, 45 N. Y. 589, 596. If, therefore, the case at bar be within the principle of the case cited, the statute of frauds can have no application ; otherwise, it is fatal to the plaintiff's right of action. Now, a distinction must be observed between a case where the party has an interest in the property to be protected when the convey-

ance thereof is made, and a case where the party has no such interest. In the latter when he has no such interest to be protected, the case would fall within the statute. But in the former, where he has an interest, he will be protected in his rights, although the agreement between him and the person taking title rests in parol. "In such cases, equity will not permit a party to retain property obtained on the faith of a verbal contract and consummate a fraud by retaining the property and refusing to perform the contract." *Levy* v. *Brush, supra,* per GROVER, J.; *Wolford* v. *Herrington,* 74 Penn. St. 311 ; *Boynton* v. *Housler,* 73 id. 453 ; *Beegle* v. *Wentz,* 55 id. 369. To the same effect is the decision in *Stoddard* v. *Whiting,* 46 N. Y. 627, which case, in many of its features, is like the one at bar.

The question now arises, had the plaintiff an existing, vested interest in the leases when the contract was entered into between Van Rensselaer, of the first part, and Church, Kidd and Cagger, of the other part, dated March 1, 1862, and when Kidd and Cagger subsequently took the conveyance ? That he then had an interest in the leases seems beyond peradventure. He held contracts with Van Rensselaer by which, on due performance on his part, the latter was bound to convey them to him. These contracts were partly performed on his part. He had already paid to Mr. Van Rensselaer a very considerable amount on the purchase price agreed by him to be paid ; and the contracts were beyond question of great value to him. This cannot be well denied. It was of the utmost importance to him that his interest should be protected from forfeiture ; and such protection might be secured by an oral agreement with Kidd and Cagger in the way it is here alleged and found to have been done. *Stoddard* v. *Whiting, supra,* on page 632. It was competent to establish the plaintiff's right and interest in the leases by parol in this case, notwithstanding Kidd and Cagger took and held the leases under an absolute conveyance from Van Rensselaer.

It is further urged that improper evidence was received against the defendant's objection, to establish the arrangement between the plaintiff and Kidd and Cagger, in this, that the plaintiff was allowed to testify to personal transactions and communications between himself and Mr. Cagger, who was then deceased, contrary to the provisions of section 399 of the Code. The representatives of the Cagger estate are not before the court on this motion.

This question may therefore be considered without regard to their rights. It will be seen on an examination of the rulings of the court, that the evidence admitted was competent as against the defendant Kidd, inasmuch as it had reference to transactions and communications wherein the latter participated. Such was the case in most instances, where objections were urged against the plaintiff's testimony as incompetent under the provisions of the section cited. Thus the evidence was competent as against Kidd. The defendants, Kidd and Cagger, were not partners in this matter. As represented in the conveyance to them, they were tenants in common of the property conveyed. It was therefore admissible for the plaintiff to testify to what occurred between himself and Kidd ; and the evidence could not be excluded on Kidd's objection, because Cagger, who was dead, was present and took part in the matters of inquiry. What was said and done between the plaintiff and Kidd, pertinent to the issue, might be proved by the former.

But all evidence which, by possibility, might be objectionable under the provisions of section 399, may be stricken out of the case, and there would still remain abundant proof to sustain the findings of the court : that the plaintiff was to have the leases, or all that remained of them, after the defendant's just claim upon them was fully satisfied.

The unobjectionable admissions and statements of Kidd and Cagger, the memoranda made by them, or of which they were cognizant, the letters, receipts and recitals in agreements with which they were connected, and the manner in which the business pertaining to the leases was conducted, afford abundant proof to sustain the conclusions declared by the learned judge in his findings. It is quite apparent on a full reading of the case, that the admission of the evidence objected to did not, as in fairness it could not, work any harm.

It was held in *Platt* v. *Platt*, 2 N. Y. Sup. 25, 26, that in equity actions the court will always look at the entire case, and see whether substantial justice has been done, and where that appears, it will affirm the judgment, notwithstanding the admission of testimony which, in ordinary actions at law, might have necessitated a new trial. There seems to be no ground for a new trial on Mr. Kidd's application, by reason of the admission of improper evidence.

It is further urged that the entire arrangement between the plantiff and Kidd and Cagger was entered into with a view to

hinder, delay and defraud the plaintiff's creditors; and, therefore, that he has no standing in court to enforce the agreement. This alleged defense is not set up in the answers. But it is unsupported in point of fact. It is very manifest that the arrangement was entered into in order to save the contracts with Van Rensselaer from forfeiture. Had a forfeiture been permitted, there would have been nothing growing out of them either for the plaintiff or his creditors. The inducement to action was the preservation of the plaintiff's rights, rather than to hinder, delay or defraud his creditors. Undoubtedly the plaintiff was under great pecuniary embarrassment. It was this perplexity which necessitated his action in calling Kidd and Cagger to his aid. It is not a little difficult to perceive how the rights of the plaintiff's creditors could be prejudiced by an arrangement which preserved to them, what without it would have been lost. It is quite plain, I think, that the parties in their action had no intent; as such action manifestly did not further that purpose — to hinder, delay or defraud the plaintiff's creditors.

With the questions above considered the defendants, other than Kidd and the Caggers, have, I think, no concern. As regards Kidd and the Caggers, they have the absolute legal title, and those questions are important to them in the defense of such title. But the other defendants claim only as advancers and lien-holders; and it is of no consequence to them who shall be adjudged to own the leases, so it be that their rights in them are recognized and protected. Therefore they can have no interest in the issue between the plaintiff on the one side, and Kidd and the Caggers on the other, as to their ultimate ownership. Those parties, both plaintiff and defendants, admit alike the superior right of the advancers and lien-holders to the leases, and the decision of the court gives to them the full extent of their claim, except as to an allowance for interest, which will presently receive attention.

Thus it seems that the defendants, the advancers and lien-holders are not in a position to insist upon the objections above urged by the counsel for Mr. Kidd. Their rights, as advancers and lien-holders, are in no way injuriously affected by the rulings above considered. They are not harmed by them, hence cannot be heard to complain. But were it otherwise, and admitting their rights to be affected by those objections, the same considerations which led to the conclusion that they were ineffectual as to Kidd on his motion

for a new trial, will render them unavailing also to the advancers and lien-holders. But in point of fact, the decision rendered fully recognizes the rights of the latter, and makes all needful and proper provision for the security and ultimate payment of the money due them.

It follows that all further questions which can affect their interest will arise on the accounting ordered by the interlocutory decree; and were there no special directions given therein, to control that proceeding, the case would require no further attention at this time. But this decree does contain a direction as to the allowance of interest, binding on the referee who is to take and state the accounts, and the correctness of this decision is properly challenged here. This subject will now be considered.

According to the decision, the advancers were not entitled to interest on the *bonus* of fifty per cent on their advances agreed to be allowed them in and by the instrument on which their claims are based. It appears that the first sum of $75,000 paid to Mr. Van Rensselaer on the contract executed by him, Church, Kidd and Cagger, was made up as follows:

Dean Richmond advanced $25,000 ; Porter and Cagger together, advanced $25,000 ; Harmon Pumpelly advanced $15,000, and Charles L. Austin advanced the remaining $10,000. These sums were to be repaid to those advancers from collections to be made upon the leases with interest thereon ; and also (as stated in the agreement) " the additional sum of fifty per centum of the amount respectively advanced by them ; that is to say, to Dean Richmond the sum of $12,500, being fifty per centum of the amount contributed by him ; to John K. Porter and Peter Cagger, the sum of $12,500 ; to Harmon Pumpelly, the sum of $7,500 ; to Charles L. Austin, the sum of $5,000." The *bonus* to these advancers was in all respects the same as interest. It was interest, as it was a premium to be paid for the use of money. In consideration of the moneys advanced, the advancers were to have for its use and employment in the way agreed upon, the ordinary bonus of seven per cent, with an additional bonus of fifty per cent on the sums advanced. The question now is, was interest allowable in taking and stating the accounts of the advances on this bonus ? I am content to adopt the reasoning and conclusion of Mr. Justice INGALLS on this question, as given in his opinion at special term,

He considered the question in all its bearings, as here presented,

and reached the conclusion that even the alleged promise by Kidd and Cagger to allow interest on the bonus did not authorize its allowance, on the accounting with the advancers ordered in this case. The learned judge reasons as follows :

" The agreement which provides for the payment of the bonus does not create any obligation to pay interest thereon. It provides for the payment of the principal sums advanced *and interest thereon,* but no direction to pay interest upon such bonus. It is therefore not a fair inference that the parties originally contemplated such payment, else we may infer a provision to that effect would have been inserted in the agreement. There is no evidence of an express promise on the part of the plaintiff to pay such interest. Without such promise, or something equivalent thereto, the law will not recognize a liability to pay the same. It is well settled that compound interest is not collectible, without a special agreement to pay the same, and that, too, after the original interest has become due and payable. *Van Benschooten* v. *Lawson,* 6 Johns. Ch. 313 ; *Toll* v. *Hiller,* 11 Paige, 228 ; *State of Connecticut* v. *Jackson,* 1 Johns. Ch. 13 ; *Boyer* v. *Pack,* [2 Den. 108 ; *Van Rensselaer* v. *Jones,* 2 Barb. 644.

" I do not perceive why the bonus of fifty per cent, so far as the right to compute interest thereon, can be regarded in a more favorable light than an agreement to pay interest upon a principal debt. And hence, there should, at least, be an agreement to pay interest thereon, after such bonus became due and payable. No such agreement on the part of plaintiff is established. It is insisted by the defendants that a statement of the account in their favor by Messrs. Kidd and Cagger was made, including such interest up to a certain date, and that the same was entered in a book kept in the office of plaintiff, and a copy of such statement was furnished the defendants, or some of them, and under such circumstances as should have brought knowledge thereof to the plaintiff, and that such facts are equivalent to an express promise by the plaintiff to pay interest upon such bonus until the same should be fully paid. If we assume to be established what the defendants thus claim, I do not think they have been successful in bringing their case within any principle which the law recognizes, which entitles them to charge and collect interest upon the bonus. It neither amounts to such a promise to pay such interest as the law requires to create a liability — nor can it be properly held to be such

a consolidation of the bonus with the original indebtedness as to constitute one principal sum, upon which interest can be computed. In regard, however, to the payment of interest upon such bonus which had been actually made to the parties who advanced their money, by Messrs. Kidd and Cagger, the trustees, prior to the time the plaintiff protested to Mr. Cagger against the payment of such interest, and prior to the change in the form of the receipts taken from the parties who had made the advances, I feel justified, from all the circumstances, in holding that such payments of interest have been substantially adopted by the plaintiff, or at least that his repudiation thereof has not been so prompt and of such a character, as should entitle the plaintiff to recover the same of such parties, or to be allowed the same on the accounting. The plaintiff should have promptly notified *such parties* that he objected to such payments of interest, and claimed either that it be refunded or applied upon his indebtedness. The protest which he claims to have lodged with Mr. Cagger was not sufficient. There is no doubt but that compound interest may be retained when the same is paid voluntarily by a party."

This presentation of the question by Mr. Justice INGALLS is deemed quite satisfactory and conclusive.

It is further urged that costs should have been allowed to the advancers against the fund. In equity actions, the granting or withholding of costs rests in the discretion of the trial court. *Pratt* v. *Stiles,* 17 How. 211; *Phelps* v. *Wood,* 46 id. 1. Nor can it be well maintained, that the discretion of the court in this case, in refusing costs to the defendants, was not fairly and judiciously exercised. The defendants failed in nearly all the important questions in the case both of fact and law; hence have no claim to be recompensed by an allowance of costs. As regards the defendants, the advancers and lien-holders, their rights were stated in the complaint substantially as found by the judge. On the claim for an allowance of interest on the bonus, put forward by the advancers, they have failed. Indeed, as to the advancers and lien-holders, they were only interested in the litigation to the extent of having a fair and just accounting, in order to have the amount due and unpaid to them respectively, accurately and definitely determined; as their superior right to the leases and to their avails, as security and for the purpose of payment to them of their just and full claims, was not controverted by any one.

After careful examination of the case, I am of the opinion that the moving parties have no just cause of complaint; that the findings and decision of the court at special term are well supported both in fact and law; hence the motion for a new trial must be denied, with costs.

*Motion denied.*